# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| XUEJUN ZOE MAKHSOUS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) 1:19-cv-01230<br>) Judge Andrea R. Wood |
| NICHOLAS A. MASTROIANNI II<br>YING DING | )<br>)<br>) |
| and | )<br>) |
| US IMMIGRATION FUND, LLC, aka USIF, US IMMIGRATION FUND-NY, LLC, 701 TSQ 1000 FUNDING, LLC, aka 701 Fund, 701 TSQ 1000 Funding GP, LLC, aka 701 Manager, NYC 1000 INVESTMENT, LLC, aka 701 Fund Co-Manager, 1568 BROADWAY FUNDING 100, LLC, aka 702 Fund, 1568 BROADWAY FUNDING 100 GP, LLC, aka 702 Fund Manager, NYC 2000 INVESTMENT, LLC, aka 702 Fund Co-Manager, CAPITAL 600 INVESTMENTS, LLC, aka Regional Center Co-Manager, QIAOWAI INTERNATIONAL GROUP USA, LLC, QIAOWAI INTERNATIONAL HOLDING, LLC, QIAOWAI GROUP INTERNATIONAL TRAVEL AGENCY HOLDINGS, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **MEMORANDUM OF LAW**<br>**IN SUPPORT OF MOTION**<br>**TO DISMISS COMPLAINT** |
| Defendants. | )<br>) |

| | |
|---|---|
| OTTERBOURG P.C. | LAWRENCE KAMIN LLC |
| 230 Park Avenue | 300 South Wacker Drive, Suite 500 |
| New York, New York 10169 | Chicago Illinois 60606 |
| (212) 661-9100 | (312) 372-1947 |
| (212) 682-6104 | (312) 372-2389 |

*Attorneys for Defendants Nicholas A. Mastroianni II, U.S. Immigration Fund, LLC, U.S. Immigration Fund – NY, LLC, 701 TSQ 1000 Funding, LLC, 701 TSQ Funding GP, LLC, NYC 1000 Investment, LLC, 1568 Broadway Funding 100, LLC, 1568 Broadway Funding 100 GP, LLC, NYC 2000 Investment LLC and Capital 600 Investments, LLC*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ..............................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

    The EB-5 Program ........................................................................................................3

    The 701 Project and Redeployment to the 702 Project ...............................................5

    The Complaint's Allegations Relating to the Redeployment .......................................6

    The Complaint's Allegations Relating to the Alleged Effort to
    Discredit Plaintiff .........................................................................................................7

ARGUMENT .............................................................................................................................8

    I.    THE RICO CLAIMS SHOULD BE DISMISSED ............................................8

        A.    The RICO Claim (Violations of 18 USC § 1962(c))
            Should Be Dismissed ...............................................................................8

        B.    Claim for Conspiracy to Violate RICO (§ 1962(d)
            Should Be Dismissed .............................................................................11

    II.   THE COMMON LAW CLAIMS SHOULD BE DISMISSED ..........................12

        A.    The Claim for Tortious Interference with a
            Business Relationship Should Be Dismissed .........................................12

        B.    The Claim for Civil Conspiracy Should Be Dismissed ..........................13

    III.  THE ACTION SHOULD BE DISMISSED FOR
        IMPROPER VENUE, LACK OF JURISDICTION AND
        PRIOR ACTION PENDING ............................................................................13

        A.    This Action Should Be Dismissed on Grounds of
            Improper Venue ......................................................................................13

        B.    The Complaint Should Be Dismissed on Grounds of
            Lack of Jurisdiction ................................................................................14

        C.    This Court Should Abstain from Exercising Jurisdiction .......................14

CONCLUSION ........................................................................................................................15

TABLE OF AUTHORITIES

Page

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................................8

*Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 52 F. Supp. 2d 913
 (N.D. Ill. 1999) ..........................................................................................................................10

*Cannon v. Burge*, No. 05 C 2192, 2007 WL 2278265 (N.D. Ill. Aug. 8, 2007) ............................8

*Cement-Lock, v. Gas Technology Institute*, 2005 WL 2420374 (N.D. Ill.) ...................................11

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) .............................14

*Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918
 (N.D. Ill. 2012) ..........................................................................................................................13

*Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) ............................................................................4

*Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992) ......................................................................................9

*Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006),
 *overruled on other grounds*, Hill v. Tangherlini, 724 F.3d 965 (7th Cir. 2013) ......................8

*Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013 (7th Cir. 2014) ............................... 14-15

*Hukic v. Aurora Loan Servs.*, 588 F.3d 420 (7th Cir. 2009) .........................................................14

*Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777 (7th Cir. 1999) .......................................10

*McDonald v. Schenker*, 18 F.3d 491 (7th Cir. 1994) .....................................................................9

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992) ................................................9, 10

*Prudential Ins. Co. of Am. v. Van Matre*, 158 Ill. App. 3d 298 (5th Dist. 1987) .........................12

*Schiffels v. Kemper Fin. Servs. Inc.*, 978 F.2d 344 (7th Cir. 1992) ..............................................11

*Sianey v. Intern. Amateur Athletic Federation*, 244 F.3d 580 (7th Cir. 2001) .............................11

*Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606 (1st Dist. 1995) .............................12

*Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) ...............................11

*Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759 (N.D. Ill. 2005) .............................................9

*Tellabs, Inc. v Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S. Ct. 2499 (2007) ....................... 5

V*enture Associates Corp. v Zenith Data Systems Corp.,* 987 F.2d 429 (7th Cir 1993) ................. 5

*Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011). ............................................................................ 3

*Voyles v. Sandia Mort. Corp.*, 196 Ill. 2d 288 (2001), ................................................................... 12

*Yang Ang, et al. v. U.S. Immigration Fund-NY LLC, et al.*,
    Index No. 156339/2018 .......................................................................................................... 6

*Yeftich v. Navistar*, 722 F.3d 911 (7th Cir. 2013) ............................................................................ 8

## Statutes and Rules

18 USC § 1952 ............................................................................................................................... 10

18 USC § 1962 ...................................................................................................................... 8, 11, 12

18 U.S.C. § 1964 ......................................................................................................................... 8, 10

18 U.S.C. § 1965 ..................................................................................................................... 2, 13, 14

18 U.S.C. § 2314 ............................................................................................................................ 10

28 U.S.C. § 1391(b) ................................................................................................................... 2, 13

Fed. R. Civ. P. 9(b) ....................................................................................................................... 1, 9

Fed. R. Civ. P. 12(b)(1) .................................................................................................................... 1

Fed. R. Civ. P. 12(b)(2) .................................................................................................................... 1

Fed. R. Civ. P. 12(b)(3) ............................................................................................................... 1, 13

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 5, 8

Fed. R. Evid. 201 ............................................................................................................................. 3

## Regulations

United States Citizenship and Immigration Services Regulations for EB-5 Program
    (https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartG-
    Chapter4.html#S-C) ............................................................................................................... 4

Moving Defendants[1] respectfully submit this Memorandum of Law in support of their motion, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6) and 9(b), to dismiss, with prejudice, the Complaint filed by plaintiff Xuejun Zoe Makhsous also known as Zoe Ma ("Plaintiff" or "Zoe Ma").

## PRELIMINARY STATEMENT

Plaintiff Zoe Ma describes herself as an "independent paralegal in training" (Complaint ¶ 5) who was "indirectly engaged" by non-parties in connection with their investments in New York real estate projects. (Complaint ¶¶ 28-29) Page after page of her Complaint (large portions of which were "cut and pasted" from a long since resolved action involving other parties) describes other persons and their investments. What is lacking is any actual claim by this Plaintiff against these Defendants. The Complaint is long (very long) on rhetoric but short on fact or cognizable claims. Having failed in her own EB-5 investment (*See Makhsous v. Seemeyer*, Case No. 18-C-587 (E.D. Wis. 2018)) and having litigated literally from coast to coast, including a pending action in which she has already asserted similar claims against many of these same defendants, she has decided to retaliate by bantering the word "RICO" in the hopes of getting publicity for her "business," which appears suspiciously to resemble the practice of law. The Complaint should be dismissed for multiple reasons:

1.  <u>Zoe Ma lacks standing</u>. The allegations set forth in the Complaint allege improper conduct by the Defendants *not against the Plaintiff* but rather against non-parties to this Action –

---

[1] The Moving Defendants (the "Defendants") filing this motion are Nicholas A. Mastroianni II, U.S. Immigration Fund, LLC ("USIF"), U.S. Immigration Fund – NY, LLC ("USIF-NY" or the "Regional Center"), 701 TSQ 1000 Funding, LLC ("701 Fund" or "Company"), 701 TSQ Funding GP, LLC ("Manager"), NYC 1000 Investment, LLC, 1568 Broadway Funding 100, LLC ("702 Fund"), 1568 Broadway Funding 100 GP, LLC, NYC 2000 Investment LLC and Capital 600 Investments, LLC.

Plaintiff's alleged twelve (12) "clients" who were investors in the EB-5 fund. Plaintiff alleges that her "clients" were subject to alleged misrepresentations related to the EB-5 process, but not herself.

2. <u>There is no causation or injury in fact</u>. Plaintiff cannot assert RICO claims based on alleged injuries to other parties. Therefore, the Complaint fails to state a RICO claim because it fails to plead that the alleged racketeering activity referred to in the Complaint proximately caused any damage to Plaintiff.

3. <u>RICO is not properly pleaded in any case</u>. The RICO claims fail because, among other things, Plaintiff has not adequately pleaded the two requisite predicate acts necessary to sustain a RICO claim, and as a matter of law any purported violation of the securities laws (the focal point of the Complaint) cannot provide a basis for a RICO claim.

4. <u>The state law claims have no merit</u>. Plaintiff's state law claims for tortious interference and civil conspiracy are similarly frivolous and rely solely on the threadbare allegation that certain of the Defendants sent a letter to one of Plaintiff's "clients" stating that the Defendants will not talk to Plaintiff, but that the Defendants would be pleased to speak with any other qualified advisor selected by the investor. Defendants are free to talk, or not talk, to anyone they choose. There are no allegations that the Defendants advised anyone not to hire Plaintiff or to discharge or not pay Plaintiff, so these claims fail.

5. <u>Improper venue</u>. Venue is improper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because (a) none of the Defendants are Illinois residents, and (b) none of the alleged events or omissions giving rise to any of the claims occurred in this district.

6. <u>Lack of subject-matter jurisdiction</u>. Because there is no valid RICO claim, there is no federal question jurisdiction. Although diversity jurisdiction is summarily alleged for the

state law claims, it has not been properly pleaded because Plaintiff has not pleaded the citizenship of each of the members of the limited liability company defendants.

7. <u>Lack of personal jurisdiction.</u> There are no allegations of any acts or contacts by any of the Defendants in Illinois. (Also, there has been no service of process, although the time to do so has not yet expired.)

8. <u>Abstention – prior action pending.</u> The Court should abstain from this retaliatory action on grounds that a New York State court action filed October 4, 2018 is pending that concerns the same nucleus of facts and in which Zoe Ma has already asserted counterclaims specifically including a claim that the Moving Defendants are interfering with her business relations. *See U.S. Immigration Fund LLC, U.S. Immigration Fund-NY LLC, 701 TSQ 1000 Funding, LLC and 701 TSE 1000 Funding GP, LLC v. Douglas Litowitz, Esq., Xuejun Makhsous a/k/a Ma Xuejun a/k/a Zoe Ma, and Reviv-East Legal Consultants (HK) Ltd. a/k/a Hong Kong Zhendong Legal Services Consulting Co., Ltd*, Index No. 159222/2018 (the "New York State Court Action").[2]

## FACTUAL BACKGROUND

*The EB-5 Program*

The EB-5 program was created in 1990 by Congress to encourage the flow of capital into the U.S. economy and to promote employment in the United States. Foreign investors are offered the prospect of lawful permanent residence in the U.S. if they invest a minimum of $500,000 in a

---

[2] A copy of the Complaint, Answer with Counterclaims and Reply to Counterclaims are attached respectively as Exhibits A, B and C to the Declaration ("Decl.") of Richard G. Haddad dated March 6, 2019 in support of this Motion (the "Haddad Declaration"). Under Federal Rule of Evidence 201, a Court can take judicial notice of state court proceedings. *See Virnich v. Vorwald*, 664 F.3d 206, 209 (7th Cir. 2011).

commercial enterprise in the U.S., and that investment results in the creation or maintenance of 10 full-time jobs in the U.S. for American citizens. (Complaint ¶ 31)

USIF-NY is one of America's leading EB-5 regional centers and it and its affiliates have 25 ongoing EB-5 projects across the United States, assisting nearly 6,000 EB-5 investor clients and their families from around the globe. The Regional Center has been approved by the United States Citizenship and Immigration Services ("USCIS") as a regional center under the EB-5 Program to undertake EB-5 capital investment projects in the New York City area, including a project at 701 Seventh Avenue, New York, New York at Times Square (the "701 Project"). (Complaint ¶¶ 8, 49 and https://visaeb-5.com/about-eb-5/faqs/)

USCIS regulations governing the EB-5 Program require applicants' investments to be "at risk"— *i.e.*, subject to the possibility of gain or loss—at least until the applicant has completed a two-year conditional residence period. (Complaint ¶¶ 31 – 36) USCIS regulations impose specific requirements on the use of the investor's capital during the pendency of their immigration application. In particular, investors must sustain their investment "at risk" for the entire two-year period of conditional I-526 residency. (Complaint ¶¶ 34-36)

USCIS has introduced a "redeployment" policy, first formally stated in the EB-5 Policy Manual in 2016 and 2017. Under this policy, if a new commercial enterprise ("NCE") such as the 701 Project makes an EB-5 loan and receives repayment of the EB-5 loan before its EB-5 investors have completed the two year conditional residency period, as was the case with the 701 Project, the NCE **must** reinvest—*i.e.*, redeploy—the repaid funds in a new investment.[3] Failure

---

[3] *See* PM Chap. 4, § C located at https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartG-Chapter4.html#S-C. *See Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (Courts may take judicial notice of information from official government websites.)

4

to redeploy under the terms provided by the EB-5 Policy Manual may result in denial or revocation of an EB-5 investor's immigration application. (Complaint ¶ 33)

*The 701 Project and Redeployment to the 702 Project*

The EB-5 project that Zoe Ma complains of here (but in which she has never had any interest) is the 701 Project, wherein the 701 Fund (Company) was formed to make a loan (the "701 Loan") to a third-party developer to finance a mixed-use development at 701 Broadway, Times Square, New York City. *See* Consent Solicitation Statement dated June 5, 2018 attached as Exhibit D to the Haddad Declaration and ¶ 49. [4] Four hundred investors (the "Members") each invested $500,000 into the Company, which pooled all of the investments and in turn procured the 701 Loan to the developer in the amount of $200,000,000. (Complaint ¶¶ 49-50)

In February 2018, the developer informed the Manager that it had decided to sell the 701 Project and prepay the 701 Loan, pursuant to the rights to do so in the loan documents. Construction on the 701 Project was near completion and the developer had entered into an agreement to sell the project to a purchaser who wanted to refinance the project with long term financing (Haddad Decl. Ex. D) Thus, the 701 Project was a success and the 701 Loan was repaid. As of that date, none of the members in the 701 Project had an EB-5 visa giving them the right to conditional permanent residence in the United States. As a result, the prepayment of the 701 Loan triggered a need to redeploy the repaid loan funds so the Members' capital remain

---

[4] The Supreme Court has stated that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule *12(b)(6)* motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007); s*ee also* V*enture Associates Corp. v Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir 1993) (Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim).

"at risk" while the Members' EB-5 applications are pending. The Manager sought and received approval from a majority of the Members to permit funds to be redeployed into another project located in close proximity to the 701 Project, at 1568 Broadway, NY, NY, otherwise known as 702 Times Square (the "702 Project"). (Complaint at 2 and ¶ 78, Haddad Decl., Ex. D)

A court action brought by some Members (not connected to Zoe Ma) against the Regional Center, the Company and the Manager, along with others, in the Supreme Court of the State of New York, New York County (*Yang Ang, et al. v. U.S. Immigration Fund-NY LLC, et al.*, Index No. 156339/2018), to compel arbitration (the "Arbitration Action"), was settled, the claims therein dismissed, the request for arbitration was withdrawn. Thereafter, the investors' money was successfully redeployed in the 702 Project.[5] (Complaint ¶¶ 104-07). Another successful outcome for the investors.

Plaintiff sought to "represent" other Members that, she claimed, instead of redeployment, want to withdraw their investments. In connection with soliciting such "clients," Zoe Ma employed lies and slander to defame certain of the Defendants, which is a subject of the New York State Court Action.

***The Complaint's Allegations Relating to the Redeployment***

The crux of the allegations in the Complaint concerns the Defendants' alleged conduct with respect to the redeployment of the funds from the 701 Project to the 702 Project – allegations that have nothing to do with any claim Zoe Ma may have against anyone on any theory. Her Complaint literally "cuts and pastes" page after page of the pleadings in the

---

[5] *See* Stipulation of Discontinuance located at:
https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=8bqFro0yvfdffnIodJL1Ng==

Arbitration Action, including the same italics, punctuation and definitions that make no sense.[6] (Complaint ¶¶ 74-112). In particular, Plaintiff alleges that *her "clients"* – and not the Plaintiff – were subject to misrepresentation and coercion by the Defendants. (Complaint at the second ¶ 108; there are two paragraphs numbered "108") The Complaint arguably alleges that Plaintiff, as a result of the Defendants' behavior against her "clients," she did not earn her fee and did suffer damages. She does not allege any injury to herself as a direct result of Defendants coercive conduct. (Complaint ¶ 170)

*The Complaint's Allegations Relating to the Alleged Effort to Discredit Plaintiff*

In addition to the Defendants' alleged conduct against her "clients," Plaintiff alleges that a single February 4, 2019 letter sent by Defendant Mastroianni to one of her "clients" (the "Zoe Letter") in which the Defendants state that they will not participate in any negotiations of any nature with Plaintiff allegedly interfered with her business relationships with members of the 701 and 702 Funds causing her damage. (Complaint ¶¶ 129 and 182) A copy of the Zoe Letter is attached to the Haddad Declaration as Exhibit E. Following Zoe Ma's campaign of defamation, breach of confidentiality agreements and expletive laden threats and emails, Defendants simply chose not to talk to her. That does not give rise to a cause of action. Even more significantly, notwithstanding the sending of the Zoe Letter, its recipient, Mr. Lixing Yan, is still employing her, thus eliminating any possibility of any damages resulting from that letter. *See* Haddad Decl. at Ex. F.

---

[6] Proof positive of the fact that Zoe Ma simply copied the pleadings in Arbitration Action is her referral in paragraphs 103 and 123 of the Complaint to "Petitioners" – a defined term having no place in this action, but appropriate, in a petition to compel arbitration.

**ARGUMENT**

The Complaint fails to satisfy the pleading standard set forth by the Supreme Court. "To survive a motion to dismiss under Rule 12 (b)(6), the complaint must state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013) *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) This pleading should be dismissed because, at its essence, it just presents rhetoric, conclusions and formulaic recitations of elements and not a plausible claim entitling *this* Plaintiff to any relief.

## I. THE RICO CLAIMS SHOULD BE DISMISSED

### A. The RICO Claim (Violations of 18 USC § 1962(c)) Should Be Dismissed

Preliminarily, even before considering whether the Complaint alleges facts sufficient to sustain a RICO claim, Plaintiff lacks standing to maintain such claim because she has not alleged a clear injury to "business or property" within the meaning of RICO. "To establish standing to sue, a plaintiff in a civil RICO action must show injury to 'his business or property by reason of a violation of section 1962.'" *Cannon v. Burge*, No. 05 C 2192, 2007 WL 2278265, at *2 (N.D. Ill. Aug. 8, 2007) (*quoting* 18 U.S.C. § 1964(c)). "[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite." *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds, Hill v. Tangherlini,* 724 F.3d 965 (7th Cir. 2013).

None of Plaintiff's alleged damages arise from a purported violation of RICO by Defendants against her business or property. Rather, the allegations set forth in the Complaint allege improper conduct by the Defendants *not against the Plaintiff* but rather against non-parties to this action – Plaintiff's twelve (12) "clients." Plaintiff alleges that her "clients" were subject to alleged

misrepresentations and coercion related to the EB-5 process, including allegations that the Defendants' coerced the Plaintiff's "clients" to "give up claims" related to certain fees and interest income in return of her alleged "clients'" investment in the EB-5 program. Plaintiff alleged that as a result of this alleged coercive conduct, she was deprived fees from her representation of these "clients." There is no "clear and definite" damage to her "business or property" arising from the Defendants' alleged conduct. Therefore, Plaintiff has no standing to assert the RICO claims.

Even if Plaintiff had standing to assert a RICO claim (which she does not), Plaintiff has not adequately pled a RICO cause of action. "Congress enacted civil RICO primarily to prevent organized crime from obtaining a foothold in legitimate business." *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992). However, the facial allure of treble damages has resulted in widespread abuse of civil RICO claims. Indeed, Courts have found that it to be an abuse of the RICO statute to attempt to shoehorn an ordinary business or contractual dispute into a civil RICO claim. *McDonald v. Schenker*, 18 F.3d 491, 499 (7th Cir. 1994); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025-1026 (7th Cir. 1992). Here, Plaintiff's attempt to plead a RICO claim based (at best) on garden variety common law claims is yet another example of that abuse. A plaintiff asserting a RICO claim must "allege sufficient facts to support each element of [his] [] claims; it is not enough for plaintiff to simply allege these elements in boilerplate language." *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 768 (N.D. Ill. 2005).

"The elements of a RICO violation consist of '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d at 1019. Here, Plaintiff has not alleged necessary predicate acts of racketeering activity. Pursuant to Rule 9(b), Plaintiff is required to plead allegations of fraud in a civil RICO complaint with particularity. *Midwest Grinding Co.*, 976 F.2d at 1020. Thus, a plaintiff that bases her RICO claim on a mail or

wire fraud scheme, as Plaintiff has done so in the Complaint, must allege the time, place, content of, and parties to the fraudulent communications, and must show that the plaintiff was deceived by those communications. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777 (7th Cir. 1999)

Plaintiff's conclusory statements that Defendants engaged in mail fraud and wire fraud merely by using the US mail and bank wires do not meet this standard. (Complaint ¶¶ 151-152) Indeed, Plaintiff cannot show that she was deceived by any of the purported allegations which according to the Complaint were all directed to her "clients." Plaintiff also scurrilously and scandalously alleges that "Defendants committed acts constituting indictable offenses under 18 U.S.C. §2314" by allegedly transporting and receiving stolen money and that "Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1952" by traveling in furtherance of an alleged scheme to defraud. (Complaint ¶¶ 154 – 156) Just like the allegations related to a mail or wire fraud schemes, such allegations are similarly conclusory and unsupported by facts and do not meet the necessary pleading standard.

The Complaint also spends much time suggesting that the Defendants have violated various securities laws, and many allegations in the Complaint are devoted to both United States and Chinese securities law requirements. (Complaint at ¶¶ 40-49 and 141) Any purported violation of securities laws does not provide a predicate for a RICO claim because the Private Securities Litigation Reform Act of 1995 amended RICO to eliminate securities fraud as a predicate act except where the defendant has been criminally convicted of the securities fraud. 18 U.S.C. § 1964(c)

Without alleging any racketeering activity, Plaintiff obviously fails to allege a "pattern" of racketeering activity. Under RICO, a plaintiff must allege at least two related predicate acts that "amount to or pose a threat of continued criminal activity." *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 52 F. Supp. 2d 913, 917-18 (N.D. Ill. 1999); *Midwest Grinding Co.*, 976 F.2d at 1024.

None are present here. Plaintiff's allegations here amount to alleged misconduct with respect to twelve of her "clients" between June and December 2018 who each recovered their investments in the EB-5 program and have released the Defendants. There are no allegations of ongoing misconduct and thus a far stretch from a pattern of criminal activity. Thus, Plaintiff fails to state a RICO cause of action and the First Cause of Action should be dismissed.

### B. Claim for Conspiracy to Violate RICO (§ 1962(d)) Should Be Dismissed

Plaintiff's Second Cause of Action alleges that Defendants "knowingly, willingly, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering as alleged in paragraphs 130-160 above." (Complaint ¶ 162) The claim, like Plaintiff's others, is doomed to fail. Section 1962(d) of the RICO Act prohibits a conspiracy to violate any of the substantive provisions of §§ 1962(a)-(c). It follows, therefore, that "when a plaintiff's RICO claim under 1962(c) fails to plead a violation, the RICO conspiracy claim, § 1962(d), based on the same facts must fail as well." *Cement-Lock, v. Gas Technology Institute*, 2005 WL 2420374, *18 (N.D. Ill.) *citing Stachon v. United Consumers Club, Inc*., 229 F.3d 673, 677 (7th Cir. 2000) "[T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Sianey v. Intern. Amateur Athletic Federation*, 244 F.3d 580, 600 (7th Cir. 2001), *citing Schiffels v. Kemper Fin. Servs. Inc*., 978 F.2d 344, 348 (7th Cir. 1992) Thus, in order to state a viable claim for conspiracy under § 1962(d), a plaintiff must allege that (1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *Id*. Applying the foregoing standards, Plaintiff's RICO conspiracy claim is insufficient as a matter of law. *First*, Plaintiff, as set forth above, has

failed to state any substantive violation of the RICO statute, which, in and of itself, defeats Plaintiff's RICO conspiracy claim. *Second*, Plaintiff has failed and cannot plead any facts demonstrating that Defendants agreed to commit at least two predicate acts of racketeering activity. Accordingly, Plaintiff's RICO conspiracy claim under § 1962(d) cannot be sustained.

## II. THE COMMON LAW CLAIMS SHOULD BE DISMISSED

### A. The Claim for Tortious Interference with a Business Relationship Should Be Dismissed

The Third Cause of Action asserts a claim for tortious interference with a business relationship arising as a result of one transmittal of the "Zoe Letter." Like the RICO claims, Plaintiff has failed to state a cause of action. To state a cause of action for tortious interference with a business relationship, a plaintiff must allege: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach of termination of expectancy; and (4) damage to the plaintiff resulting from the defendant's interference. *Voyles v. Sandia Mort. Corp.*, 196 Ill. 2d 288 (2001); *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615 (1st Dist. 1995). In addition to the foregoing elements, "malice", defined to mean the intent to interfere without sufficient justification, must also be found. *Prudential Ins. Co. of Am. v. Van Matre*, 158 Ill. App. 3d 298, 305 (5th Dist. 1987). Here, the Complaint fails to plead any "malice" or an intentional and unjustified interference with Plaintiff's business. Defendants' appropriately communicated with a single member of the 702 Fund and only informed that member allegedly "represented" by Plaintiff that that the Defendants would not participate in any negotiations of any nature with Plaintiff, but that the Defendants would speak with any other qualified advisor selected by the "client." (Haddad Decl. Ex. E) The Defendants did not advise anyone not to hire Plaintiff or interfered with Plaintiff's ability to do business and there are no

12

allegations in the Complaint suggesting as such. Indeed, the documentary evidence proves the contrary. According to Zoe Ma, the receipient of the Zoe Letter continues to employ her. Thus, the Plaintiff has failed to adequately plead a claim for tortious interference with a business relationship.

### B. The Claim for Civil Conspiracy Should Be Dismissed

The Fourth Cause of Action asserts a claim for civil conspiracy arising from the alleged intentional interference with prospective economic relations arising as a result of the Defendants' transmittal of the Zoe Letter. "The elements of an Illinois civil conspiracy are (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the further of which one of the conspirators committed an overt tortious or unlawful act." *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918, 923-34 (N.D. Ill. 2012). Here, the entire conspiracy relies upon transmittal of the Zoe Letter. There are no specific allegations of the existence of a conspiracy or that one or more of the Defendants were participants in such a conspiracy. Accordingly, Plaintiff's state law conspiracy claim is not properly pleaded and cannot be sustained.

### III. THE ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE, LACK OF JURISDICTION AND PRIOR ACTION PENDING

**A. This Action Should Be Dismissed on Grounds of Improper Venue.**

Under Rule 12(b)(3), a party may move for dismissal of an action filed in an improper venue. *See* Fed. R. Civ. P. 12(b)(3). Venue is improper here under 28 U.S.C. § 1391(b) because (a) none of the Defendants is an Illinois resident, and (b) none of the alleged events or omissions giving rise to any of the claims occurred in this district. Moreover, venue is not proper in this district for Plaintiff's civil RICO claims under the RICO venue provisions of 18 U.S.C. § 1965 which permit a plaintiff to sue in any district in which a defendant resides, is found, has an agent or transacts his affairs. 18 U.S.C. § 1965(a). Here, since none of the Defendants is an Illinois

13

resident, the RICO venue provisions do not assist Plaintiff. Accordingly, the Complaint should also be dismissed on grounds of improper venue.

**B. The Complaint Should Be Dismissed on Grounds of Lack of Jurisdiction.**

*First*, there is no federal subject matter jurisdiction. If the Court agrees that there is no federal question remaining in the action, there is no reason to keep this case because there is no diversity jurisdiction as pleaded. Plaintiff has not pleaded the citizenship of the members of each limited liability company defendant. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009). For diversity jurisdiction purposes, the citizenship of a limited liability company is the citizenship of each of its members. *Second*, there is also no personal jurisdiction over the Defendants because there is no allegation of any conduct or contacts by any of these Defendants in Illinois.

**C. This Court Should Abstain from Exercising Jurisdiction**

If the Court declines to dismiss the Complaint on grounds of improper venue, the Court should nonetheless abstain and decline to exercise jurisdiction here as a result of the pending New York State Action which concerns the same nucleus of facts and in which the Plaintiff has already asserted counterclaims. The doctrine of abstention provides a District Court discretion to decline to exercise or postpone the exercise of its jurisdiction where there is an already pending action. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) To determine whether a stay is appropriate in the context of concurrent federal-state jurisdiction, the Court must first determine whether the state and federal court actions are parallel and whether the cases raise the same legal allegations or arise from the same set of facts. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). If the federal and state court actions are

parallel, "the court must decide whether abstention is proper by carefully weighing ten non-exclusive factors." *Id.*[7]

Here, Plaintiff's claims in this action arise from the same facts as alleged in the New York State Court Action. In that action, the Plaintiff has already filed counterclaims. Since the New York State Court Action was filed first and concerns the same facts as alleged here, Plaintiff's rights are adequately protected in New York State. Accordingly, this Court should abstain from exercising jurisdiction in this action.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court dismiss with prejudice all claims asserted against them in the Complaint and grant such other relief as it deems just and proper.

Dated: March 6, 2019

| | |
|---|---|
| LAWRENCE KAMIN LLC | OTTERBOURG P.C. |
| By: /s/ Peter E. Cooper | By: /s/ Richard G. Haddad |
| Peter E. Cooper | Richard G. Haddad (*pro hac vice* pending)    (rhaddad@otterbourg.com) |
| (pcooper@lawrencekaminlaw.com) | |
| 300 South Wacker Drive, Suite 500 | 230 Park Avenue |
| Chicago Illinois 60606 | New York, New York 10169 |
| Tel:   (312) 372-1947 | Tel: (212) 661-9100 |

*Attorneys for Defendants Nicholas A. Mastroianni II, U.S. Immigration Fund, LLC, U.S. Immigration Fund – NY, LLC, 701 TSQ 1000 Funding, LLC, 701 TSQ Funding GP, LLC, NYC 1000 Investment, LLC, 1568 Broadway Funding 100, LLC, 1568 Broadway Funding 100 GP, LLC, NYC 2000 Investment LLC and Capital 600 Investments, LLC*

5614961

---

[7] The factors are: 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim. *Id.*