IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XUEJUN ZOE MAKHSOUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19-cv-01230 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| NICHOLAS A. MASTROIANNI II, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Xuejun Zoe Makhsous has brought this action *pro se* against Defendants Nicholas A. Mastroianni II, Ying Ding, and numerous companies under their control, as well as their lawyer Richard Haddad. Originally, Plaintiff's first amended complaint ("FAC") alleged that Defendants operated a criminal enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and also forth several state law claims. (Dkt. No. 27.) Defendants filed three different motions to dismiss that, together, sought dismissal of the entire FAC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 30, 33, 38.) In addition, Defendants filed a motion for sanctions. (Dkt. No. 41.) After the motions were fully briefed, Plaintiff voluntarily dismissed without prejudice all claims in the FAC except for her state law claims for defamation and intentional interference with prospective economic advantage. For the reasons that follow, Defendants' motions to dismiss are granted with respect to the remaining claims and their motion for sanctions is denied.

**BACKGROUND**

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views the facts in the light most favorable to Plaintiff as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Plaintiff is a self-employed Chinese-to-English interpreter, a paralegal-in-training, and a self-described investigator, researcher, and EB-5 investors' rights activist. (FAC ¶ 6.) The EB-5 Immigrant Investor Program was created by Congress as part of the 1990 Immigration Reform Act. (*Id.* ¶ 33.) Under the EB-5 program, foreign citizens are given the opportunity for lawful permanent residence in the United States if they invest at least $500,000 in a United States commercial enterprise and that investment results in the creation of at least ten permanent jobs for United States workers, so long as the investor's funds remain at risk. (*Id.* ¶¶ 33, 38, 46.) Since 2014, Plaintiff has engaged in EB-5 fraud analysis. (*Id.* ¶ 26.)

Plaintiff claims that, at some point between 2014 and 2016, Defendants Mastroianni and Ding began touring Chinese cities to promote securities issued by three EB-5 funds owned by Mastroianni that would finance real estate developments in New York City. (*Id.* ¶ 57.) Those funds were Defendants 701 TSQ 1000 Funding, LLC ("701 Fund"), 1568 Broadway Funding 100, LLC ("702 Fund"), and AYB Funding 100, LLC. (*Id.* ¶¶ 11, 14, 17, 57.) Each of the three EB-5 funds was managed by another of Mastroianni's companies, Defendant U.S. Immigration Fund, LLC ("USIF"). (*Id.* ¶¶ 8, 13, 16, 19.)

Mastroianni and Ding also solicited investors for the EB-5 funds by using Ding's visa consulting company, Defendant Qiaowai,[1] as a marketing agent. (*Id.* ¶¶ 58–59.) According to Plaintiff, Mastroianni and Ding used Qiaowai to issue misleading marketing brochures for the

---

[1] The FAC names three different Qiaowai entities as Defendants but refers to them collectively as Qiaowai. (*See* FAC ¶¶ 21–23.)

EB-5 funds that convinced Chinese investors that they were making 5-year loans to the real estate developments that were secured by the subject development. (*Id.* ¶ 71.) In reality, the investors purchased unsecured limited partnership interests in one of Mastroianni's EB-5 funds, thereby giving up control of their investment and putting it at risk for total loss even if the investors did not receive EB-5 visas. (*Id.* ¶¶ 70–71.) And although the investors were told that their investment would provide them with a pathway to becoming lawful permanent residents in the United States, they were not told that there was a backlog of EB-5 visas that could prevent them from ever actually obtaining one. (*Id.* ¶ 121.) To invest in one of the EB-5 funds, investors had to make a $500,000 capital contribution and pay over $10,000 in visa consulting fees to Qiaowai as well as $48,000 to $52,000 in administrative fees to the EB-5 fund. (*Id.* ¶¶ 61, 63, 73.) Both Ding and Qiaowai received as compensation for their efforts a substantial portion of the administrative fees paid by the investors. (*Id.* ¶¶ 59, 73.)

Plaintiff first got involved with the EB-5 funds' investors in August 2017, when an investor in the 702 Fund requested her to conduct fraud analysis. (*Id.* ¶ 175.) Ultimately, based on Plaintiff's work, the investor successfully obtained the return of his $500,000 investment, along with the $52,000 he paid in fees. (*Id.* ¶ 175.) Later, around May 2018, several 701 Fund investors sought the return of their investments. (*Id.* ¶ 118.) When their demands were rejected, they retained an attorney, Douglas Litowitz, to represent them in a lawsuit for the return of their investments. (*Id.* ¶¶ 118–19.) Plaintiff assisted Litowitz in the effort by serving as an interpreter for the Chinese investors and by providing fraud analysis. (*Id.*) In response, Mastroianni and Ding undertook an effort to convince the exiting investors to drop Litowitz as their attorney in favor of an attorney that had previously served as a securities lawyer for USIF (*Id.* ¶ 126.) To accomplish

this result, Defendants recruited a person going by the name "Linda" to infiltrate the exiting investors' WeChat[2] groups and relentlessly discredit Plaintiff and Litowitz. (*Id.* ¶¶ 126, 189.)[3]

On October 4, 2018, USIF and the 701 Fund filed a lawsuit in New York state court against Plaintiff, Litowitz, and Reviv-East, a Hong Kong company for which Plaintiff performed due diligence as an independent contractor. (*Id.* ¶¶ 177, 179.) In the lawsuit, USIF and the 701 Fund allege that Litowitz and Plaintiff set up Reviv-East in order to defraud them. (*Id.* ¶ 179.) Defendant Richard Haddad represented USIF and the 701 Fund in the lawsuit. (*Id.*) Plaintiff claims that the lawsuit was baseless and intended solely to intimidate Plaintiff and damage her reputation as one of the few advocates for the rights of Chinese EB-5 investors. (*Id.* ¶¶ 186, 188.) Ultimately, the lawsuit was dismissed. (*Id.* ¶ 191.)

When Defendants realized that their lawsuit failed to deter investors in the EB-5 funds from engaging Plaintiff for her investigative services, they sent a letter to the 702 Fund's investors that contained lies about Plaintiff. (*Id.* ¶ 190.)[4] And after the lawsuit was dismissed, Defendants started a campaign of lies about Plaintiff. (*Id.*) In particular, Haddad contacted at least one of Plaintiff's acquaintances in Chicago and told that person that a court has determined that Plaintiff has violated the law by providing legal services. (*Id.* ¶¶ 191, 253.) Mastroianni also referred to Plaintiff as an ambulance chaser in an interview with a reporter. (*Id.* ¶ 252.)

## DISCUSSION

### I. Motions to Dismiss

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[2] WeChat is a Chinese messaging and social media app.

[3] Plaintiff does not specify which particular Defendant was involved in this effort.

[4] Again, Plaintiff fails to specify which Defendants were involved in this effort.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### A. Defamation

One of Plaintiff's remaining claims is for defamation. In Illinois, a "statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers the person in the eyes of the community or deters third persons from associating with her." *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). To state a defamation claim, a plaintiff must allege facts showing: (1) a false statement by the defendant about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) that publication caused damages. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006).

There are two recognized types of defamatory statements in Illinois: defamation *per se* and defamation *per quod*. *Naleway v. Agnich*, 897 N.E.2d 902, 908 (Ill. App. Ct. 2008). A defamatory statement is actionable *per se* where "its harm is obvious and apparent on its face." *Solaia Tech.*, 852 N.E.2d at 839. Illinois recognizes five categories of statements considered defamatory *per se*:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* On the other hand, a statement may be defamatory *per quod* where the statement is either "defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se*" or not defamatory on its face but can be shown to have injurious meaning by resort to extrinsic evidence. *Bryson*, 672 N.E.2d at 1221. Unlike in a defamation *per se* action, in a *per quod* action, the plaintiff must plead special damages from the statement—meaning "actual damage to her reputation and pecuniary loss resulting from the defamatory statement." *Id.* at 1222.

Here, Plaintiff points to four statements that she contends constitute defamation. However, she does not specify whether her claims are for defamation *per se* or *per quod.* Nonetheless, to the extent that Plaintiff seeks to bring her defamation claims *per quod*, they would fail because she has not pleaded special damages. Rather, she simply states that Defendants' conduct "caused and continues to cause injuries to Plaintiff in its [*sic*] business or property." (FAC ¶ 256.) Such a vague allegation of reputational or monetary damages, "without a specific accounting of those damages or an explanation of how the purported defamation caused them," does not suffice. *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009). Consequently, the Court considers here only whether Plaintiff states a claim for defamation *per se*. The Court construes Plaintiff to be alleging that each of the four statements fall under the category for statements imputing that a person lacks ability in her profession or otherwise prejudices her in her profession.

The first basis for Plaintiff's defamation claim is based on unspecified Defendants using "Linda" to discredit and defame Plaintiff in WeChat groups used by certain of the EB-5 funds' investors. The problem with Plaintiff's allegations is that she speaks generally of Linda's conduct but fails to point to any specific defamatory statement. While Plaintiff is not required to recite the allegedly defamatory statement verbatim, she must still plead the substance of any statement

6

"with sufficient precision and particularity so as to permit initial judicial review of its defamatory content." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Because Plaintiff fails to do that with respect to Linda's conduct, she fails to state a claim for defamation. Similarly, any defamation claim against Haddad in relation to his communication to Plaintiff's acquaintance that a court determined Plaintiff violated the law by providing legal services fails because it lacks sufficient detail, such as the identity of Plaintiff's acquittance. *See Belcastro v. United Airlines, Inc.*, No. 17-cv-01682, 2018 WL 1875537, at *8 (N.D. Ill. Apr. 19, 2018) (finding that the plaintiff could not state a claim for defamation when he failed to provide information as to the "when, how, or to whom the allegedly defamatory statement was published"). Indeed, Plaintiff also creates confusion as to who made the statement. At one point the FAC alleges that Haddad made it himself, while at another point it says the statement was conveyed by an agent of Haddad. (*Compare* FAC ¶ 253 *with* FAC at p. 6.[5])

Next, Plaintiff claims that USIF and the 702 Fund filed the New York lawsuit to "legalize their slanderous statement against Plaintiff and deter investors from using Plaintiff's fraud analysis service." (FAC ¶ 251.) This allegation cannot support a claim because parties are protected from defamation actions based on statements made in connection with a lawsuit. *Marchioni v. Bd. of Educ. of City of Chi.*, 341 F. Supp. 2d 1036, 1051 (N.D. Ill. 2004). Finally, Plaintiff claims that Mastroianni defamed her by calling her an "ambulance chaser." Such a statement also cannot support a defamation claim. In the first place, "ambulance chaser" is a derogatory term used for lawyers and Plaintiff is not a lawyer. *See Ambulance Chaser*, Dictionary.com, https://www.dictionary.com/browse/ambulance-chaser?s=t (last visited March 31, 2020) ("[A] lawyer who seeks accident victims as clients and encourages them to sue for

---

[5] Plaintiff's FAC contains a long, unnumbered, multi-paragraph introduction. Allegations contained in that introduction are cited to by page number.

damages.") Thus, it cannot truly impute to Plaintiff a lack of ability in her profession or otherwise harm her in her profession. Moreover, Mastroianni's statement was a non-actionable statement of opinion "as it was too broad, conclusory, and subjective to be objectively verifiable." *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 699 (Ill. App. Ct. 2002).

In sum, Plaintiff has failed to plead adequately that any Defendant made a statement about her that was defamatory *per se*. For that reason, her defamation claim is dismissed.

### B. Intentional Interference with Prospective Economic Advantage

Plaintiff also asserts a claim for tortious interference with a business relationship and a claim for conspiracy of intentional interference with prospective economic relations. Though the causes of action have different titles, the Court construes them both as setting forth a claim for the tort of intentional interference with prospective economic advantage. To state such a claim, the plaintiff must allege: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996).

In her opposition to the motions to dismiss, Plaintiff claims that all Defendants (except Haddad) engaged in conduct that interfered with her expectancy of a business relationship with the exiting investors and injured her by causing 40 of the exiting investors to seek representation from Mastroianni and Ding's preferred attorney. The conduct to which Plaintiff points in her opposition brief as forming the basis for her claims is Defendants' various defamatory statements and the initiation of the New York lawsuit. As discussed above, however, Plaintiff has failed to plead that any Defendant made a defamatory statement. *See, e.g.*, *Jacobson v. CBS Broad., Inc.*,

8

19 N.E.3d 1165, 1182 (Ill. App. Ct. 2014) (holding that a dismissed defamation claim cannot serve as a basis for a claim of intentional interference with prospective economic advantage). Nor can filing a lawsuit form the basis of a claim for intentional interference with prospective economic advantage. *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) ("Illinois law prohibits . . . basing a cause of action for tortious interference with business opportunity on the wrongful filing of a lawsuit.").

While she does not address the issue in her opposition brief, the basis cited in the FAC for one of the intentional interference with a prospective economic advantage claims is a letter Defendants sent to Plaintiff's current and potential clients that caused them to "refrain from entering into a business relationship with Plaintiff due to concerns of unprofessionalism, unethical conducts [*sic*], and incompetence." (FAC ¶ 297.) But given that Plaintiff did not rebut Defendants' arguments in their motions to dismiss that the letter could not establish their intentional and unjustified interference in Plaintiff's business expectancy, any argument is forfeited or waived. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Dillard v. Chi. State Univ.*, No. 11 C 3362, 2012 WL 714727, at *2 (N.D. Ill. Mar. 1, 2012). Nor could the letter support her claim because the FAC provides no details whatsoever about the content of the letter sufficient to show or allow the Court to infer that Defendants unjustifiably interfered with Plaintiff's business expectancy by sending the letter. *See Atanus v. Am. Airlines, Inc.*, 932 N.E.2d 1044, 1051 (Ill. App. Ct. 2010) ("The element of 'purposeful' or 'intentional' interference refers to some impropriety committed by the defendant in interfering with the plaintiff's expectancy of entering into a valid business relationship with an identifiable third party.").

In short, Plaintiff has not plausibly alleged that any Defendant engaged in conduct that constituted an intentional or unjustified interference with Plaintiff's business expectancy. For that

9

reason, Plaintiff's intentional interference with prospective economic advantage claims are dismissed.

### C. Dismissal with Prejudice

Defendants contend that this Court should dismiss Plaintiff's claims with prejudice. However, the Seventh Circuit has stated that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try and amend her complaint before the entire action is dismissed." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). While the FAC is not Plaintiff's original complaint, this is the first time the Court has rendered a ruling dismissing any of her claims under Rule 12(b)(6). Given that Plaintiff's defamation and intentional interference with prospective economic advantage claims were dismissed largely for providing insufficient details regarding Defendants' allegedly violative actions, the Court believes that Plaintiff should be given an opportunity to remedy the deficiencies identified in this opinion.

Plaintiff has already indicated that she wishes to file a revised and narrowed complaint that contains new factual allegations in support of her claims. The Court will allow Plaintiff this opportunity. Of course, her amended complaint should address and remedy the issues addressed above. Moreover, Plaintiff should be sure that her amended complaint is, in fact, revised **and** narrowed. In particular, she should be mindful of Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011) (internal quotation marks omitted). Plaintiff's 94-page FAC tested the limits of that rule. And although length alone is insufficient to justify dismissing a

complaint, "unintelligibility is certainly a legitimate reason for doing so." *Id.* at 797–98. The FAC had significant organizational issues, owing to the inclusion of numerous extraneous facts. It was also, at times, repetitive.

In addition, while the Court has not had the opportunity to address the merits of the voluntarily dismissed claims, Plaintiff has indicated that she intends to pursue those claims in a different forum. Thus, the Court does not expect to see them revived in this proceeding. Moreover, Plaintiff would be well-advised to avoid pursuing claims that lack an adequate factual or legal basis. Otherwise, she potentially risks being subjected to sanctions.

## II.     Motion for Sanctions

Defendants ask this Court to impose sanctions on Plaintiff pursuant to Federal Rule of Civil Procedure 11 and under the Court's inherent powers. According to Defendants, Plaintiff should be sanctioned because her FAC raises frivolous arguments, makes factual contentions that have no evidentiary support, and was filed solely to harass Defendants.

Rule 11(b) requires an attorney or unrepresented party to certify to the best of her knowledge, information, and belief, formed after a reasonable inquiry that a pleading, among other things, "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Where a court determines that Rule 11(b) has been violated, it may impose a reasonable sanction on the party that violated the rule. Fed. R. Civ. P. 11(c)(1).

As an initial matter, Plaintiff contends that the Rule 11 motion should be denied for failing to comply with Rule 11(c)(2). Under Rule 11(c)(2), a "motion for sanctions must be made

separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." In addition, the "motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged [pleading] is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). The purpose of the requirement in Rule 11(c)(2) is to compel the party seeking sanctions to "first fire a warning shot that gives the opponent time to find a safe harbor." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 882 (7th Cir. 2017).

Here, Defendants concede that they did not serve Plaintiff with the sanctions motion concerning the FAC prior to filing it with the Court. Instead, after the Court gave Plaintiff leave to amend the complaint, but before Plaintiff filed the FAC, Defendants sent Plaintiff a letter notifying her of their intent to seek Rule 11 sanctions, along with a proposed motion addressed to Plaintiff's original complaint. The letter demanded that Plaintiff withdraw her original complaint in its entirety or else Defendants would file the motion for sanctions. Such notice was provided more than 21 days in advance of the deadline for Plaintiff to file her FAC. Defendants therefore contend that they gave Plaintiff the opportunity to forgo filing the FAC and avoid sanctions.

Unlike every other Circuit to address the issue, the Seventh Circuit requires only substantial compliance with Rule 11(c)(2). *N. Ill. Telecom*, 850 F.3d at 887–88. Thus, the Seventh Circuit has found substantial compliance where a party seeking sanctions has previously sent the opposing party a letter, instead of a proposed motion, explaining the grounds for sanctions and providing more than 21 days to remedy the problem. *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 552–53 (7th Cir. 2011); *Nissenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003). Nonetheless, the Seventh Circuit has recently acknowledged that the

substantial compliance theory "stands alone and is difficult to reconcile with the explicit requirements of the Rule." *N. Ill. Telecom*, 850 F.3d at 887.

Given the Seventh Circuit's own doubts about the substantial-compliance theory, this Court believes that it should not be broadly applied beyond those specific factual circumstances in which the Seventh Circuit has previously applied it. This Court has found no example of the Seventh Circuit, or any other district court in this Circuit, finding substantial compliance where a motion for sanctions is submitted before an amended complaint is filed and addressed to an earlier complaint. Even where the amended complaint remains substantively similar to the previous complaint, the Court concludes that the party seeking sanctions should provide notice addressed to the specific complaint for which it intends to file a motion for sanctions.

A party filing an amended complaint may well believe that she has remedied the deficiencies in the earlier complaint. The party seeking sanctions cannot just assume that the opposing party will or should know that its basis for seeking sanctions with respect to the earlier complaint have carried over to the amended complaint. On the other hand, the party filing the amended complaint may well have tried to address deficiencies in the earlier complaint and is entitled to a new "warning shot" from the party seeking sanctions before the motion is filed. Placing the responsibility on the party seeking sanctions to renew its notice with respect to the amended complaint is both fair to the opposing party and does not significantly burden the party seeking sanctions. *See N. Ill. Telecom*, 850 F.3d at 888 n.5 ("It should not be difficult for a party who is serious about seeking Rule 11 sanctions to comply with Rule 11(c)(2).").

Moreover, the letter attaching Defendants' motion for sanctions with respect to the original complaint fails to apprise Plaintiff that Defendants would file a motion for sanctions with respect to an amended complaint. Instead, it simply states that the original complaint "violates

Rule 11 for the reasons set forth in the Motion enclosed with this letter. Accordingly, unless you withdraw the Complaint within twenty-one (21) days, the Moving Defendants will file the motion under Rule 11 for sanctions." (Haddad Decl. in Supp. of Mot. for Sanctions, Ex. C, Dkt. No. 44-1.) Nowhere in the letter do Defendants advise Plaintiff against filing her FAC or warn that her a similar motion will be filed if the FAC does not remedy the deficiencies identified in the proposed motion attached to the letter. Instead, the letter simply states that Defendants will pursue sanctions unless Plaintiff withdraws her original complaint. Thus, because Defendants did not substantially comply with Rule 11(c)(2), their motion for sanctions is denied insofar as it arises under Rule 11.

But Defendants also request that the Court impose sanctions on Plaintiff under its inherent authority to protect itself from vexatious litigants. A court may invoke its inherent powers to sanction litigants even where procedural rules exist that would sanction the same conduct. *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004). Sanctions may be imposed "if the court finds that the party 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Nonetheless, "there is a need to be cautious when resorting to inherent powers to justify an action, particular when the matter is governed by other procedural rules." *Id.* (internal quotation marks omitted). Here, Defendants request that the Court invoke its inherent authority to sanction Plaintiff for conduct not addressed under Rule 11. In particular, Defendants claim that Plaintiff made misrepresentations before this Court, perpetrated a fraud in her amended complaint, and has been practicing law without a license.

First, Defendants contend that Plaintiff made misrepresentations before this Court during a hearing on Defendants' motions to dismiss the original complaint. At that hearing, Plaintiff asked to file an amended complaint and told the Court that she would retain counsel to assist her in

14

doing so. In addition, she stated that the amended complaint would add twelve of her Chinese clients as co-plaintiffs so they could assert their own claims. Yet, when the FAC was filed, Plaintiff remained unrepresented and no new plaintiffs were added. There are many reasons why Plaintiff's plan to retain counsel and add plaintiffs could have fallen through. Defendants present no evidence and give no reason for this Court to look at this occurrence with suspicion. On the other hand, Plaintiff states that the plaintiffs she sought to add to the FAC were unable to retain United States counsel. Not only is that explanation plausible, it also shows that Plaintiff heeded this Court's admonition to Plaintiff that she, as a non-lawyer, could not represent any new plaintiffs—their pleadings would need to be signed by an attorney or they would need to enter *pro se* appearances. If those clients could not retain an attorney and did not wish to appear *pro se*, Plaintiff made an appropriate decision in deciding to proceed alone.

Next, Defendants contend that Plaintiff perpetrated a fraud in her amended complaint by asserting the same claims that she had suggested to the Court that she would drop. But Defendants mischaracterize Plaintiff's statement to this Court. In response to the Court's confusion over Plaintiff's role in the case, Plaintiff asked for leave to amend the complaint and represented that the FAC would add new plaintiffs. As discussed above, just because Plaintiff's plan did not come to fruition does not mean that she made the representation in bad faith. Of course, Plaintiff ultimately did voluntarily dismiss many of her claims such that the only claims remaining for purposes of Defendants' second motions to dismiss were the defamation and intentional interference with prospective economic advantage claims. And while the Court dismissed those claims, it did so because they were insufficiently alleged. But it cannot find at this point that those claims were brought solely to harass Defendants and increase costs.

Finally, Defendants argue that Plaintiff should be sanctioned for engaging in the unauthorized practice of law. A court may invoke its inherent power to impose sanctions for the unauthorized practice of law. *United States v. Johnson*, 327 F.3d 554, 561 (7th Cir. 2003). But the Court cannot find that Plaintiff is doing so here, where she is the sole plaintiff in the action and proceeding *pro se*. Defendants point to Plaintiff's conduct involving other courts and venues, but this Court does not find it appropriate to exercise its inherent power to sanction Plaintiff for conduct unrelated to the present action. *See id.* at 560 & n.8 (finding that a federal court has power to regulate and discipline conduct by nonlawyers amounting to practicing law without a license where their unauthorized activities impact matters pending before the court); *see also Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002) (stating that a district court's inherent powers should be "exercised sparingly, to punish misconduct . . . occurring in the litigation itself, not in the events giving rise to the litigation").

In sum, Defendants cannot seek sanctions under Rule 11 because they failed to substantially comply with Rule 11(c)(2). Moreover, the Court has not found that Plaintiff has engaged in any conduct warranting the imposition of sanctions under its inherent powers. For these reasons, Defendants' motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 30, 33, 38) are granted and the FAC is dismissed without prejudice. Plaintiff shall have until May 5, 2020 to file a Second Amended Complaint that remedies the deficiencies discussed in this opinion. If she fails to file a Second Amended Complaint by that date, the dismissal will be deemed with prejudice. Defendants' motion for sanctions (Dkt. No. 41) is also denied.

ENTERED:

Date: March 31, 2020

_____
Andrea R. Wood
United States District Judge