UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XUEJUN ZOE MAKHSOUS ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| NICHOLAS A. MASTROIANNI II ) | |
| YING DING ) | Civil Action No. 1:19-cv-01230 |
| RICHARD HADDAD ) | Judge Andrea R. Wood |
| ) | |
| and ) | |
| ) | |
| US IMMIGRATION FUND, LLC, ) | **PLAINTIFF XUEJUN ZOE** |
| 1568 BROADWAY FUNDING 100, LLC ) | **MAKHSOUS' SECOND AMENDED** |
| QIAOWAI INTERNATIONAL HOLDING, LLC ) | **COMPLAINT** |
| ) | |
| Defendants. ) | TRIAL BY JURY DEMANDED |

## SECOND AMENDED COMPLAINT

**NOW COME** Plaintiff XUEJUN ZOE MAKHSOUS (hereinafter "Plaintiff"), pro se and files her Second Amended Complaint against Defendants NICHOLAS A. MASTROIANNI II, RICHARD HADDAD, YING DING, US IMMIGRATION FUND, LLC, 1568 BROADWAY FUNDING 100, LLC, and QIAOWAI INTERNATIONAL HOLDING, LLC, state as follows;

### I. THE PARTIES

1. The Plaintiff Xuejun Zoe Makhsous ("Plaintiff' or "Zoe") is a translator, researcher, an EB-5 investor rights advocate and a paralegal in-training. Zoe is a resident of Cook County, Illinois.

2. Defendant Nicholas A. Mastroianni, II ("Mastroianni"), is a Florida resident and is a fund manager, without any registration with Securities and Exchange Commission ("SEC") as an investment advisor by law, that manages more than 20 funds with $2.9 billions of EB-5 investment from about 6,000 Chinese investors.

3. Defendant U.S. Immigration Fund, LLC, ("USIF") is a Delaware limited liability company whose owner and controlling principal is Nicholas Mastroianni, II.

4. Defendant 1568 Broadway Funding 100, LLC ("702 Fund"), is a Delaware limited liability company ("USIF") whose owner and controlling principal is Nicholas Mastroianni, II.

5. Defendant Ying Ding, ("GDOS"), is a US permanent resident who resides at 4552 Tuscany Dr, Plano TX at least between 2011 and 2018.

6. Defendant Qiaowai International Holding, LLC, with its registered agent as Corporation Service Company, located at 251 Little Falls Dr. Wilmington, DE 19808, and whose controlling principal is Ding ("GDOS").

7. Defendant Richard Haddad ("Haddad") is a resident in the State of New York who works at 230 Park Ave, New York, NY.

8. Mr. Lixing Yan ("Yan") is a non-party to this action. Mr. Yan sued Defendants in February 2019 in New York State Court to withdraw his investment of $552,000 from 702 Fund. Plaintiff represents Mr. Yan at an American Arbitration Association proceeding on his request of withdrawal since July 2019.

9. Defendant 701 TXQ Funding 1000, LLC ("701 Fund"), is a non-party whose owner and controlling principal is Nicholas Mastroianni, II.

## II.    THE JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).

11. This Court also has subject matter jurisdiction because the amount in controversy exceeds $75,000.00 for the Plaintiff.

12. Plaintiff is a resident of Cook County IL and this Court has jurisdiction.

### III. FACTUAL ALLEGATIONS

**Plaintiff is an Advocate Against Fraud Upon EB-5 Investors**

13. The US investor immigration program has experienced such rampant frauds in the past 15 years that SEC had to issue an investors alert in 2013 to warn about investment scams exploiting immigrant investor program.

14. SEC warns investors specifically about layers of companies run by the same individuals and unregistered investments, like those 20 unregistered EB-5 funds all run by Mastroianni.

15. Unfortunately, Chinese investors lack access to due diligence in the US due to language barrier and restricted access to google search within China.

16. As a result unsuspecting Chinese investors have signed investments agreements to surrender the control of their investments to fund managers like Mastroianni and USIF without rights to withdraw and effectively become economic slaves.

17. Plaintiff has filed several complaints of EB-5 frauds with SEC and state authorities. One of her accomplishment working with attorney Litowitz is that, based on their complaint, Illinois Securities Department recently issued enforcement actions against a well-known EB-5 operator in Illinois, similar to Mastroianni and USIF, for selling and managing EB-5 funds without registration. *See* Exhibit 1. Illinois Order Against CMB.

18. Since 2017 Makhsous has been assisting defrauded Chinese investors with due diligence on their investments and connecting Chinese investors with US attorneys to request return of investments.

19. After Mastroianni and USIF blackmailed Mr. Yan's New York attorney into withdrawal from representing him, Makhsous took over to represent Mr. Yan at the New York arbitration against Mastroianni and USIF.

**Defendant Mastroianni and USIF Are Unregistered Investment Advisors with Dark Past**

20. In October 2014 Fortune Magazine published an article titled "The tangled past of the hottest money-raiser in America's visa-for-sale program". This article detailed Defendant Mastroianni's records of bankruptcies, lawsuits and felonies prior to Mastroianni's new life as a money-raiser and fund managers of EB-5 investment from Chinese investors.

21. Knowing the registration requirements set by SEC to manage EB-5 investment, Mastroianni engaged securities attorneys including Ronald Fieldstone of Saul Ewing Arnstein & Lehr LLP to claim bogus exemption for Mastroianni from registering as investment advisor and to claim bogus exemptions for Mastroianni's EB-5 funds from investment company.

22. In one of the Private Placement Memoranda drafted by Ronald Fieldstone Mastroianni and USIF claim exemptions from registration with SEC by claiming *"all investment advice under this Offering is being provided to Members by independent, unaffiliated, third party, licensed and bonded migration agents outside the United States"*. However, Mastroianni and USIF don't specify who are the *"independent, unaffiliated, third party, licensed and bonded migration agents outside the United States"*.

23. With information and belief, the so-called *"independent, unaffiliated, third party, licensed and bonded migration agents"* referred by Mastroianni and USIF are Defendant GDOS. However, according to the Finders Agreement GDOS has made explicit representation to Mastroianni/USIF that GDOS *"is **not** providing advice to any Foreign Investor in connection with Investing into the Partnership"* set up by Mastroianni/USIF.

24. Without being registered as investor advisor, Mastroianni and USIF manage and redeploy $2.9 billion investment pooled from almost 6,000 investors living in US or abroad.

25. Many investors are angered by the financial decisions made by Mastroianni and USIF. Investors have filed numerous lawsuits against them and made Mastroianni/USIF the most

hated EB-5 operator in the US. In July 2018, 124 investors from 701 Fund filed a lawsuit in New York State court demanding alternative investment options. (*Ang v. USIF*, Sup Ct, NY County, filed 7/9/2018); Investors, Ms. Guiling Gou from AYB Funding LLC and Mr. Yan from 702 Fund filed lawsuits in New York State court in February 2019 demanding return of investment. Additionally, more than 80 investors from a Florida fund sued Mastroianni and USIF for fraud in 2018, *Fu v. Mastroianni* (Palm Beach County filed 10/11/2018) and *Peng et al v. Mastroianni et al* (Florida Southern District Court filed 01/27/2020).

**Commercial Bribery Scheme Committed by Defendants Mastroianni and GDOS**

26. Since 2010 more than 4000 Chinese EB-5 investors, including Mr. Yan, contracted with GDOS to perform due diligence on EB-5 investment. Chinese EB-5 investors paid $12,000 each to GDOS for its service. Chinese EB-5 investors relied upon due diligence provided by GDOS to make investment decisions, including investment in 702 Fund.

27. With information and belief, Mastroianni and USIF have entered a confidential and exclusive Master Finder's Agreement ("Kickback Agreement") with GDOS to market *exclusively* the securities issued by each of 20 EB-5 Funds managed by Mastroianni and USIF and to induce Chinese investors to make investment for compensation. *See* Exhibit 2.

28. Mastroianni and USIF demand EB-5 investors to pay $49,000 to $52,000 in administrative fees in addition to $500,000 EB-5 investment.

29. Mastroianni and USIF charge 4% to 6.95% annual interests on EB-5 investment from real estate developers and turn around to pay 0.25% annual interests to EB-5 investors if any.

30. The Kickback Agreement provides that, for each investor from GDOS, Mastroianni and USIF kickback about $40,000 to GDOS from the $49,000 to $52,000 administrative fee that investors like Mr. Yan paid to Mastroianni and USIF.

31. The Kickback Agreement provides that Mastroianni and USIF to kickback 1.85% to 3% of billions of EB-5 investment annually to GDOS including redeployment periods.

32. Mastroianni and USIF are fully aware of GDOS's agency relationship with EB-5 investors.

33. Mastroianni/USIF entered "Kickback Agreement" to sabotage GDOS's fiduciary duty to the Chinese investors and led to financial injuries to Chinese investors including Mr. Yan.

34. Neither Mastroianni/USIF nor GDOS discloses to Chinese investors prior to signing investment contracts that GDOS would receive substantial compensation for steering them to Mastroianni/USIF.

35. Mastroianni and USIF fail to disclose to Chinese investors prior to signing investment contracts that Chinese investors will give up control of their investments including the rights to withdraw their investments upon request to Mastroianni and USIF.

36. Mastroianni and USIF fail to disclose to Chinese investors that the Kickback Agreement stipulates that GDOS shall steer Chinese investors to Mastroianni/USIF's own attorney Ignacio Donoso ***exclusively*** for representation, who has collected $15,000 legal fee from each of Chinese investors without direct communications and written engagement letters.

37. Now Mastroianni/USIF have used the confidential clause of arbitration proceeding to stop Plaintiff from informing 4000 Chinese investors about their Kickback Agreement with GDOS. In protest for such unfair clause, Plaintiff resigned from the arbitration in New York.

38. At the time of investment with Mastroianni/USIF Mr. Yan was 18 years old freshly out of high school. Mr. Yan had no income and was not qualified for investing in private securities. Mr. Yan' parents gifted him $500,000 to apply for investment immigration program in 2016.

39. With information and belief, GDOS, under the terms of Kickback Agreement, induced Yan to make investment with Mastroianni and USIF in 2016 by providing faulty due diligence, incomplete disclosures and even altering Mr. Yan's signed documents.

40. In February 2019 Mr. Yan sued Defendants for fraud and requested the return of $552,000. In May 2019 Mr. Yan filed request for arbitration. *See* Exhibit 3.

41. Plaintiff represented Mr. Yan at the arbitration and forced Mastroianni and USIF to release the text of the Kickback Agreements with GDOS that they have withheld from Mr. Yan and over 300 investors of 702 Fund since 2016.

42. The Kickback agreements between Mastroianni/USIF and GDOS was the very evidence that Plaintiff was seeking when she filed her Original Complaint about Defendants' fraud and bribery in violation of RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO").

## Defamation Against Plaintiff in 2018 and 2019

43. Defendants, individually or collectively, spread defamatory statements to third parties about Plaintiff between 2018 and 2019 in retaliation of Plaintiff's advocacy.

44. In May 2018, some Chinese investors from 701 Fund approached Plaintiff to perform due diligence on Defendants Mastroianni and 702 Fund. Plaintiff introduced attorney Douglas Litowitz ("Litowitz") to represent the withdrawing investors of 701 Fund who refused to invest in 702 Fund.

45. Several withdrawing investors of 701 Fund informed Plaintiff that Defendants GDOS arranged its staff "Linda" to label Plaintiff a "fraud" on several Chinese social media group chats in May and June 2018 in an effort to steer withdrawing investors of 701 Fund to be represented by Defendants' former attorney Fieldstone. At the same time Fieldstone continued to promote Defendants Mastroianni and USIF on an article published by The Real Deal on June 13, 2018 titled "Chinese EB-5 investors in major New York developments want their millions back". As result, about 40 investors of 701 Fund signed engagement agreements with Fieldstone instead of with Plaintiff's teammate Douglas Litowitz.

46. In retaliation of Plaintiff's involvement in assisting investors of 701 Fund as well as her refusal to remove the reference of GDOS from Plaintiff's promotional message on a website, Mastroianni and USIF, for the benefit of GDOS, filed a lawsuit in a New York Court in October 2018 against Plaintiff for $ 23 million damages alleging that her collaboration with attorney London representing an investor of 702 Fund in December 2017 was a fraud. Mastroianni and USIF intentionally confused London with Litowitz in the New York suit against Plaintiff.

47. Separately, when interviewed by a reporter from The Real Deal Defendant Mastroianni called Plaintiff *"an "ambulance chaser" who was only interested in duping investors into paying her legal fees."* in an article titled "In legal back and forth, Mastroianni hit with new suit over EB-5 investments at Times Square project" published on February 28, 2019.

48. In the same article Mastroianni repeated a false accusation in the New York suit of Plaintiff committing fraud to the reporter from The Real Deal by stating Plaintiff's RICO suit against Defendants *"is a thinly veiled attempt to retaliate and move the narrative away from the pending N.Y. action against her for fraud and related causes of action".*

49. Defendants' New York action has been dismissed both in New York State Court and the Appeal Court. Defendants later offered Plaintiff settlement not to refile their claims.

50. On about April 9 2019 Defendant Haddad, on behalf of Mastroianni and other defendants, sent an agent to Chicago and stated to at least one acquaintance of Plaintiff to the effect that this Court has determined that Plaintiff has violated law by providing legal service illegally.

51. On August 13, 2019 during an arbitration proceeding between Mr. Yan and Defendants Mastroianni, USIF and 702 Fund, Defendant Haddad sent a defamatory email to then arbitrator that Plaintiff has sent Defendants "***highly offensive personal emails***" on

prostitution and espionage. *See* Exhibit 4. Plaintiff filed complaint of defamation with the arbitrator. Due to Defendants' behavior, the arbitrator resigned.

52. At the hearing on September 24 2019 this Court asked Defendants "Do **_these emails_** exist?" Defendant Haddad stated "Yes". At the hearing on March 5 2020 this Court asked Defendants about submitting **_these emails_** for *In Camera* Review, Defendant Haddad held up a folder purporting to contain **_these emails._** At the court hearing on March 5 2020 Defendants didn't object to Plaintiff's further clarification in court that **_these emails_** in question are those specifically about Plaintiff's discussion on espionage and prostitution.

53. On March 6 2020, when sending evidence of **_highly offensive personal emails_** in Defendants' possession for this Court for *In Camera* Review, Defendants sent this Court an unsolicited letter to backtrack their claims about **_these emails_** sent by Plaintiff.

## FIRST CAUSE OF ACTION
**(Defamation Per Se)**

54. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

55. Between 2018 and 2019 Defendants started a campaign of lies about Plaintiff to discredit her to her clients, acquaintances, reporters, arbitrators and even to this Court.

56. In May and June 2018, Defendants GDOS called Plaintiff "fraud" to investors of 701 Funds on Chinese Wechat group chat that caused about 40 investors abandoned working with Plaintiff and attorney Litowitz knowing that Plaintiff was trying to alert the investors that GDOS had breached fiduciary duty it owed to the investors.

57. In February 2019 Mastroianni publicly defamed Plaintiff and called her "ambulance chaser" "fraud" to the reporter from The Real Deal during an interview and such statements later were

published on The Real Deal site knowing that Plaintiff was trying to alert the investors of the risks of the New York hotel development and the dark past of Mastroianni.

58. In April 2019 Defendant Haddad has contacted at least of one of Plaintiff's acquaintance and told this individual that this Court has determined that Plaintiff had violated law by providing legal service. Neither this Court or any other authority have made such determination.

59. In August 2019, Defendants sent an email to an arbitrator during arbitration proceedings between Mr. Yan and Defendants accusing Plaintiff of sending ***highly offensive personal emails about espionage and prostitution*** to Defendants knowing that there was no such emails sent from Plaintiff.

60. Between September 2019 and March 2020, Defendants repeatedly told the Court that they were in possession of ***highly offensive personal emails about espionage and prostitution*** sent by Plaintiff but failed to produce these emails for In Camera Review by the Court.

61. Defendants, in falsely accusing Plaintiff "ambulance chaser", "fraud", and sending "highly offensive personal emails" to defendants, have committed defamation per se under Illinois law.

62. Defendants conduct was willful, wanton, malicious, and oppressive in their attempt to silencing Plaintiff from exposing the confidential and exclusive Kickback Agreement between Mastroianni and USIF and GDOS that has sabotaged the fiduciary duties that Chinese EB-5 investors relied upon.

63. Defendants' unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiff, including economic damages and damages to her reputation. By reason of Defendants' misconduct Defendants are liable to Plaintiff in an amount of $50 millions. Further, Plaintiff seeks the imposition of punitive damages sufficient to deter Defendants from committing such unlawful conduct in the future.

## SECOND CAUSE OF ACTION

### (Tortious Interference with a Business Relationship)

64. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

65. Plaintiff has business relationship with many investors in the EB-5 funds managed by Defendants.

66. Defendants know of that relationship and Defendants, individually and in collusion with one another, and with knowledge, by engaging in the conduct described above, directly or indirectly, interfered with that relationship.

67. Defendants individually and in collusion with one another, and with knowledge, by engaging in the conduct described above, directly or indirectly, acted solely out of malice and coercion, and/or improper means that amounted to a crime or independent tort.

68. Defendants' interference caused injury to Plaintiff's relationship with her present and future clients.

69. Defendants conduct was willful, wanton, malicious, and oppressive in their attempt to silencing Plaintiff from exposing the confidential and exclusive Kickback Agreement between Defendants Mastroianni and USIF and Defendants GDOS that has sabotaged the fiduciary duties Defendants GDOS owe to Chinese EB-5 investors.

70. Defendants' unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiff in its business or property. By reason of Defendants' misconduct Defendants are liable to Plaintiff in an amount of $50 millions. Further, Plaintiff seeks the imposition of punitive damages sufficient to deter Defendants from committing such unlawful conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

I. Award $50 million in compensatory damages, consequential, exemplary and punitive damages.

II. Enjoin permanently Defendants from interfering business relations between Plaintiff and her clients in her work and collaboration with US attorneys assisting investors seeking return of their EB-5 investment in full and with interests.

III. Award attorneys' fees and other litigation costs reasonably incurred in this action.

IV. Any other relief the Court deems just and proper.

**JURY DEMAND**

**Plaintiff respectfully demands a jury trial on all issues so triable.**

Dated: May 5, 2020                                     Respectfully Submitted,

                                                                    _____/s/ Xuejun Makhsous____

                                                                    XUEJUN MAKHSOUS, Plaintiff, *pro se*
                                                                    P. O. BOX 2651, GLENVIEW, IL 60025