UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XUEJUN ZOE MAKHSOUS,<br><br>                Plaintiff,<br><br>   v.<br><br>NICHOLAS A. MASTROIANNI II<br>YING DING<br>RICHARD HADDAD<br><br>     and<br><br>US IMMIGRATION FUND, LLC,<br>1568 BROADWAY FUNDING 100, LLC,<br>QIAOWAI INTERNATIONAL HOLDING, LLC,<br><br>                Defendants. | 1:19-cv-01230<br>Judge Andrea R. Wood |

# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

| | |
|---|---|
| OTTERBOURG P.C.<br>230 Park Avenue<br>New York, New York 10169<br>(212) 661-9100<br>(212) 682-6104 | LAWRENCE KAMIN LLC<br>300 South Wacker Drive, Suite 500<br>Chicago Illinois 60606<br>(312) 372-1947<br>(312) 372-2389 |

*Attorneys for Defendants Nicholas A. Mastroianni II, Richard Haddad,
U.S. Immigration Fund, LLC, 1568 Broadway Funding 100, LLC
and 701 TXQ Funding 1000, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

The EB-5 Program .............................................................................................................. 4

    Zoe Ma's Role as an Alleged Investor Rights Advocate ............................................. 5

    Yan Arbitration ............................................................................................................. 6

    Original and Amended Complaints/Decision of the Court .......................................... 8

    Allegations Related to Purported "Scheme" .............................................................. 10

    Allegations Related to Claim for Defamation ........................................................... 10

ARGUMENT ..................................................................................................................... 11

    I.    THE TORTIOUS INTERFERENCE CLAIM
          SHOULD BE DISMISSED ........................................................................... 11

    II.   THE DEFAMATION CLAIM SHOULD BE DISMISSED ....................................... 13

    III.  NO FURTHER LEAVE TO AMEND SHOULD BE ALLOWED ........................... 15

CONCLUSION .................................................................................................................. 15

Cases

*Anderson v. Vanden Dorpel*, 667 N.E.2d 1296 (Ill. 1996) ................................................................11

*Atanus v. Am. Airlines, Inc.*, 932 N.E.2d 1044 (Ill. App. Ct. 2010) ...............................................12

*Belcastro v. United Airlines, Inc.*, No.17-cv-01682, 2018 WL 1875537
 (N.D. Ill. Apr. 19, 2018) ................................................................................................14

*Green v. Rogers*, 917 N.E.2d 450 (Ill. 2009) ................................................................13

*Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643 (7th Cir. 1983)............................................. 12-13

*Jacobson v. CBS Broad, Inc.*, 19 N.E.3d 1165 (Ill. App. Ct. 2014) ................................................12

*Long and Makhsous v. McAfee*, 2020 WL 1309973 (E.D. Cal., Mar. 19, 2020),
 report and recommendation adopted 2020 WL 2307305
 (E.D. Ca. Ma 8, 2020) ................................................................................................6

*Makhsous v. Mastroianni*, 2020 WL 1530740 (N.D. Ill., Mar. 31, 2020) .......................................6

*Marchioni v. Bd. of Educ. of City of Chi.*, 341 F. Supp. 2d 1036
 (N.D. Ill. 2004) ................................................................................................13, 15

*Procter & Gamble Co. v. Quality King Distributions, Inc.*, 974 F. Supp. 190
 (E.D.N.Y. 1997) ................................................................................................14

*Schivarelli v. CBS, Inc.*, 776 N.E.2d 693 (Ill. App. Ct. 2002) ...............................................13, 15

*Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606 (1st Dist. 1995) ..............................11

*Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825 (Ill. 2006) .........................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007) .....................5

*Venture Associates Corp. v Zenith Data Systems Corp.*, 987 F.2d 429 (7th Cir 1993)...................5

*Voyles v. Sandia Mort. Corp.*, 196 Ill. 2d 288 (2001)................................................................11

Statutes and Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................*passim*

N.Y. Civ. Rights Law § 74................................................................................................14

Other Authority

PM Chap. 4, § C (htttps://www.uscis.gov/policymanual/HTML/PolicyManual-
    Volume6-PartG-Chapter4.html#S-C) ................................................................................... 5

Defendants[1] respectfully submit this Memorandum of Law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss with prejudice, the Second Amended Complaint dated May 5, 2020 (the "SAC") [Dkt. No. 88], filed by plaintiff Xuejun Zoe Makhsous also known as Zoe Ma ("Plaintiff" or "Makhsous").

## PRELIMINARY STATEMENT

In its March 31, 2020 Memorandum Opinion and Order [Dkt. No. 82] (the "Decision") granting the Defendants' Motion to Dismiss the Amended Complaint, this Court warned Makhsous "to avoid pursuing claims that lack an adequate factual or legal basis." Nonetheless, Plaintiff responded to this Court's Decision by filing yet another pleading rehashing claims and allegations that have already been considered and rejected by this Court and persisting in asserting specious and fanciful claims completely lacking a plausible factual or legal basis. Notably, Makhsous fails to address, let alone remedy, the very specific pleading failures identified by this Court in dismissing the Amended Complaint. Not only are the claims in the SAC without merit, but, by attaching to the SAC documents and communications exchanged in a confidential arbitration, Makhsous directly violated an express order issued in the arbitration matter of Yixing Yan (the "Yan Arbitration") that forbade Makhsous from filing the Yan Arbitration documents in this case and required her to treat such information as confidential. The willful, brazen and admittedly intentional violation of an order issued just twenty-four hours before the filing of the SAC earlier is yet another example of this Plaintiff's pattern of abusive, meritless and repetitive pleadings and conduct in this and other proceedings.

---

[1] The moving Defendants (the "Defendants") filing this motion are Nicholas A. Mastroianni II, U.S. Immigration Fund, LLC ("USIF"), 1568 Broadway Funding 100, LLC ("1568 Broadway") and Richard Haddad ("Attorney Haddad"). The entity 701 TXQ Funding 1000, LLC ("701 Fund") is referred to inconsistently (and in the same sentence of ¶ 9 of the SAC) as both a "Defendant" and a "non-party." 701 Fund is not listed in the caption of the SAC. If 701 Fund is a Defendant, this motion is filed on its behalf as well.

The SAC should be dismissed with prejudice because yet again Plaintiff has failed to plead a plausible claim for relief.

*First*, Plaintiff fails to articulate a claim for tortious interference against the Defendants. Just as in her original claims, Plaintiff asserts page after page of allegations relating to *other persons* and their investments, but not with respect to Plaintiff and her "investments" for the simple reason that this Plaintiff has no investment, no contract and no relationship with any Defendant. Paragraphs 13 through 42 (*i.e.*, most of the "facts" in the SAC) allege matters either wholly irrelevant or immaterial to this case (such as exhibit 1 to the SAC, which has nothing to do with any Defendant or transaction in this case) or conduct by the Defendants relating to an agreement between certain Defendants and non-parties to this Action – investors in an EB-5 fund. Plaintiff alleges that these investors, but not she, since she is not an investor, should have been advised of the terms of their agreement. Plaintiff further alleges that the Defendants attempted to "silence" the Plaintiff by opposing her request in the Arbitration to release the agreement from the Arbitration's confidentiality order. Plaintiff alleges that this conduct constitutes tortious interference with a business relationship.

Plaintiff, however, cannot assert a tortious interference claim based on alleged injuries to other parties or rulings in an arbitration proceeding precluding her from filing the very documents she filed. Nor can the Defendants' concerns to keep an arbitration confidential form the basis of such a claim, particularly when the issue of confidentiality was litigated before the Arbitrator and the Plaintiff lost. None of these allegations constitute a plausible claim for relief; none of these allegations plead the elements of tortious interference; none of these allegations remedy the defects found by the Court in the Decision. In short, none of this pleads a legally valid claim by this Plaintiff against these Defendants. Notably, Plaintiff did do work as a "litigation and arbitration" advisor with a "client," which apparently ended last month when she voluntarily quit – she resigned from representing that

"client" within one hour of being ordered by the arbitrator on May 4, 2020 to maintain confidentiality, which she promptly breached. Thus, no tortious interference occurred or could have occurred.

*Second*, with respect to the claims for alleged defamation, Plaintiff merely rehashes claims and allegations that this Court previously found could not sustain a claim for defamation, and the new allegations are similarly deficient. The Plaintiff alleges the following:

(a) that the Defendants filed the N.Y. Action[2] in retaliation to Plaintiff's "advocacy" actions. In its Decision, this Court has already ruled that statements by parties in connection with a lawsuit do not constitute defamation. Decision at 7. So this allegation cannot support a claim.

(b) that Defendant Mastroianni allegedly called Plaintiff an "ambulance chaser" and a "fraud" in a news article. First, in its Decision, the Court has already dismissed the "ambulance chaser" claim, ruling that since Plaintiff is not an attorney, calling her an "ambulance chaser" cannot impugn her and in any event, that the statement is a non-actionable statement of opinion. Decision at 7-8. Moreover, although the Plaintiff alleges that Defendant Mastroianni referred to her in an article as a "fraud," the quote Makhsous included in the SAC shows no such statement. Paragraph 48 of the SAC, in which the words are quoted *in haec verba* simply says there is a court action against Plaintiff for fraud – a true statement about a then-pending suit and not actionable as a matter of law.

(c) that Attorney Haddad, allegedly through an unnamed agent, stated to an unnamed acquaintance of Plaintiff that this Court ruled Plaintiff was illegally providing legal services. As this Court found in the Decision, Plaintiff's allegation against Attorney Haddad continues to lack the necessary "when, how, or to whom the allegedly defamatory was published" to sustain a claim for defamation. Decision at 7.

---

[2] *See U.S. Immigration Fund LLC v. Litowitz,* Supreme Court, State of New York, New York County (the "N.Y. Court"), Index No. 159222/2018 (the "N.Y. Action").

(d) that Attorney Haddad allegedly sent a "defamatory" email to the Arbitrator in the Yan Arbitration (the "Yan Arbitrator") stating that in his and the Defendants' experience, Plaintiff sends "highly offensive personal emails" regarding such inappropriate matters as prostitution and making accusations of espionage.[3] As the Court is aware from Attorney Haddad's March 6, 2020 submission of the subject emails to the Court, the statement itself is true – Makhsous sends personally offensive emails. Further, Defendant Haddad's email is not defamatory as a matter of law because it constitutes: (a) a statement made in connection with litigation, so is not actionable; (b) a statement of opinion that is not actionable; and (c) is covered by the litigation privilege, as the Yan Arbitrator already ruled.

In filing the SAC, a third "bite at the apple," Plaintiff violated Arbitration orders, failed to heed this Court's caution "to avoid pursuing claims that lack an adequate factual or legal basis" and has followed Plaintiff's long-standing pattern of scorched-earth and reckless litigation tactics throughout the country. And, Makhsous has failed to remedy the substantial defects in her claims and pleading. The SAC should therefore be dismissed in its entirety with prejudice.

## FACTUAL BACKGROUND

*The EB-5 Program*

The EB-5 program was created in 1990 by Congress to encourage the flow of capital into the U.S. economy and to promote employment in the United States. Foreign investors are offered the prospect of lawful permanent residence in the U.S. if they invest a minimum of $500,000 in a

---

[3] There is not and never was any statement that Plaintiff was involved in prostitution or espionage, or that anyone said so; rather that in her own emails, Makhsous has referred to Defendants in that context.

commercial enterprise in the U.S., and that investment results in the creation or maintenance of 10 full-time jobs in the U.S. for American citizens, and the invested funds remain at "risk."[4]

USIF is one of America's leading EB-5 regional centers and it and its affiliates have 25 ongoing EB-5 projects across the United States, assisting nearly 6,000 EB-5 investor clients and their families from around the globe. USIF has been approved by the United States Citizenship and Immigration Services as a regional center under the EB-5 Program to undertake EB-5 capital investment projects throughout the country, including a project at 1568 Broadway, New York, New York (the "702 Project"). (SAC ¶ ¶ 3, 26)

### *Zoe Ma's Role as an Alleged Investor Rights Advocate*

The Plaintiff describes herself as, among other things, "an EB-5 investor rights advocate and a paralegal in-training." (SAC ¶ 1). Despite her description as an "advocate," the SAC just represents the latest gambit by Makhsous to use courts and arbitration proceedings throughout the country (a) to seek publicity for her business of providing non-attorney "litigation and arbitration" services, and (b) to improperly use information obtained in confidential arbitration proceedings to further her "scorched-earth" litigation tactics of asserting frivolous claims against parties, including the Defendants in this action and other threatened actions, adding and dropping claims, and filing and refiling motions and pleadings.

By way of example, thus far this year 2020, she has had three *pro se* cases, including her Amended Complaint in this case, dismissed in the federal courts (and the year is not yet half over) (a) *Makhsous v. Daye*, 2020 WL 419291 (E.D. Wisc. Jan. 27, 2020); (b) *Long and*

---

[4] https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-eb-5-visa-classification. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) (Supreme Court has stated that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule *12(b)(6)* motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); s*ee also Venture Associates Corp. v Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir 1993).

*Makhsous v. McAfee*, 2020 WL 1309973 (E.D. Cal., Mar. 19, 2020) (Magistrate Judge Report and Recommendation of Dismissal) and Order Adopting Magistrate Judge Report and Recommendation dated May 8, 2020, 2020 WL 2307305; and (c) *Makhsous v. Mastroianni*, 2020 WL 1530740 (N.D. Ill., Mar. 31, 2020).

Moreover, since 2019, Makhsous has been found by at least two courts to have made false claims and/or doctored documents:

- In *Makhsous v. Makhsous*, No. 17-M1-016331, Makhsous was accused of making false claims in a pleading, and was sanctioned by Judge Catherine Schneider of the Cook County Illinois Circuit Court.

- In *Long and Makhsous v. McAfee*, United States Magistrate Judge Stanley Boone made the remarkable ruling that documents filed by Makhsous would not be considered because "*aspects of the modified proofs of service appeared to demonstrate that the documents were altered* using a computer program, a copier, or otherwise, by utilizing signatures and aspects from other proofs of service to make it appear as if the process server had made the modifications." 2020 WL 1309973 at *2. (Emphasis added).

Finally, Plaintiff also sued a slew of Wisconsin state officials, personally, not just in their representative capacities, in connection with an assisted living facility for which the state stopped making payments due to irregularities. Plaintiff claimed in federal court pleadings in 2018 that the acts of the Wisconsin officials led to her personal "financial ruin." *See Makhsous v. Speemeyer*, No. 18-cv-587 (E.D. Wis.) [Dkt. No. 28 at ¶ 14]. Therefore, her alleged "ruin" was assuredly not the act of any Defendant here.

Defendants provide this background to the Court to put Plaintiff's fantastical assertions in context and because Plaintiff has improperly used the Yan Arbitration as a means by which to obtain documents and information to promote her business and her *pro se* claims in this Action.

*Yan Arbitration*

Non-party Lixing Yan ("Yan") is an investor in the 702 Project. (SAC ¶ 8) Under Makhsous' auspices as "litigation and arbitration" advisor, through a New York attorney, Yan

filed an action with the N.Y. Court seeking a temporary restraining order to enjoin the investment of hundreds of millions of dollars into a real estate project, *Lixing Yan v. 1568 Broadway Funding 100 LLC, et al.*, Index No. 651143-2019, Supreme Court, New York County (the "Yan Action"). (SAC ¶ 8). The Yan Action quickly came to an ignominious end for Yan with (a) the TRO being denied, (b) the request for a preliminary injunction withdrawn, (c) the case being dismissed and with Yan stipulating to arbitrate any remaining issues, and (d) the New York Judge stating that she was *sua sponte* referring the matter to the attorney disciplinary committee.[5]

As a result of the Order compelling arbitration, following dismissal of the Yan Action, on May 17, 2019, acting as a non-attorney representative, Plaintiff filed the Yan Arbitration. (SAC ¶ 8). On May 4, 2020, the day before she filed the SAC, Plaintiff abruptly resigned as Yan's arbitration representative, just one hour after entry of the Order by the Honorable Harriet F. Klein, J.S.C. (Ret.) ("Yan Arbitrator"), denying Makhsous' request to file the confidential documents from the Arbitration in this action.[6] (SAC ¶ 8) Specifically, by attaching Exhibits 2 and 4 to the SAC, a "Master Finder's Fee Agreement" dated November 4, 2015 with Beijing Overseas Education & Immigration Consult Service Co., Ltd. (the "Brokerage Agreement"); and (b) a certain email sent by Defendant Haddad to the prior Yan Arbitrator dated August 13, 2019 (the "Haddad Email"), Plaintiff violated multiple orders in the Yan Arbitration.

In a Decision and Order dated May 13, 2020 (the "May 13 Arbitration Order"),[7] in view of Makhsous' violation of yet another of the Arbitrator's Orders, the Yan Arbitrator permitted

---

[5] https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=OCktSGmwAU0k97EYwP_PLUS_z4A==&system=prod and https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=sWmCzClafG67lRZPaW1gBQ==&system=prod

[6] Because she had the day before "resigned" as Yan's representative in the Yan Arbitration, the statement in Paragraph 8 of the SAC that she "represents" Yan in that proceeding is false – she quit.

[7] See Declaration of Richard G. Haddad in Support of Defendants' Motion To Dismiss the Second Amended Complaint dated June 22, 2020 ("Haddad Decl."), Ex. A.

Defendants to file the Yan Scheduling Order and other arbitration documents with this Court. The May 13 Arbitration Order cogently describes Makhsous' contumacious conduct:

> The Arbitrator finds that Ms. Makhsous' conduct was intentional and willful. Any doubt of that is removed by her own language in the May 7, 2020 email. Her conduct runs contrary to the basic rules of law and procedure governing our system of jurisprudence. If every litigant who felt aggrieved by an Order were free to violate it to achieve his/her personal sense of "fairness", we would have nothing short of chaos. That Ms. Makhsous took it upon herself to do whatever she wanted, as if the Order did not exist, is a flagrant example of bad faith and disrespect for authority. Were she an attorney, there is no question that the Rules of Professional Conduct would be implicated. The facts present here would, in a court of equity, also likely trigger application of the doctrine of unclean hands. …
> To allow Ms. Makhsous to use the offending documents in the Illinois Federal Court, without allowing Mr. Haddad to demonstrate its wrongfulness, would not foster common honesty and decency and would effectively stamp with approval her inequitable conduct.  Haddad Decl., Ex. A at ¶¶ 7, 8.

The only fact from the Yan Arbitration that is relevant to the SAC is that the arbitration proves that Defendants did not interfere with Makhsous' business – she had a client and quit when she did not like how that case was proceeding.

*Original and Amended Complaints/Decision of the Court*

The pattern exhibited in the court and arbitration proceedings involving Yan is also playing out before this Court.  The Plaintiff overreaches and asserts frivolous claims which are withdrawn and then attempts to use the Court process to obtain discovery to enable her to assert other unknown claims against these Defendants and others in various jurisdictions:

- Facing a motion to dismiss after filing her original Complaint in this action [Dkt No. 8], the Plaintiff responded to this Court's inquiry -- concerning her lack of standing to sue the original defendants and lack of any relationship or connection whatsoever with any of the original defendants -- by telling this Court that she would retain counsel, get "20 affidavits," find new plaintiffs, and fix her Complaint through amendment [Dkt. No. 19].  She kept none of her promises to the Court and instead filed an amended complaint in which she doubled down on her

original meritless claims and added two causes of action against the Defendants' counsel personally [Dkt. No. 27];

- After the motion to dismiss the amended complaint and the Defendants' motion for sanctions was fully briefed [Dkt. Nos. 31, 34 and 42], the Plaintiff withdrew the claims in the Amended Complaint of RICO, RICO conspiracy, conversion, collusion and malicious prosecution and advised the Court that she would be filing yet another Complaint against the Defendants in New York.  (9/24/19 conference at pp. 5 and 17, Haddad Decl., Ex. E);[8]

- At the same September 24 conference, Plaintiff requested that the Court compel the Defendants to produce certain emails (that she herself had sent) that were referenced in the Haddad Email, a confidential communication with the Yan Arbitrator.  The Court denied Plaintiff's request, finding that the emails were not relevant to the pending motion to dismiss and that it was not appropriate to open up discovery to support Plaintiff's claims.  (*Id*. at pp. 21-23).

On March 31, 2020, this Court issued the Decision granting the Defendants' motion to dismiss the Amended Complaint and permitted the Plaintiff the opportunity to file a further amendment.  [Dkt. No. 82]  However, the Court cautioned the Plaintiff regarding any further amendment stating that the "Plaintiff would be well-advised to avoid pursuing claims that lack an adequate factual or legal basis.  Otherwise, she potentially risks being subjected to sanctions."  [Decision at 11]  The Plaintiff has not heeded the Court's caution and as set forth herein, the SAC lacks an adequate factual or legal basis and should be dismissed with prejudice.

---

[8] No such New York filing has occurred and instead Plaintiff filed the SAC here.  The Plaintiff's filing of the initial Complaint here (which was subject to a motion to dismiss), then the Amended Complaint (which was also subject to a motion to dismiss), followed by Plaintiff's withdrawal of most of her claims, resulted in a colossal waste of the Court's time and the Defendants' energies, and constitutes conduct that unreasonably and vexatiously multiplied the proceedings.

*Allegations Related to Purported "Scheme"*

According to the Complaint, since 2010, more than 4000 Chinese EB-5 investors entered into an agreement with Defendant Ying Ding (defined as "GDOS" in the SAC) to "perform due diligence on EB-5 investment," including investment in the 702 Project. SAC ¶ 26. Plaintiff is not among any of those 4000 investors. Plaintiff does not identify any client who invested through GDOS in the 702 Project other than Yan, and plainly there was no tortious interference by Defendants with Plaintiff's business relations with Yan, as she "represented" him until she quit on May 4, 2020, the day before filing the SAC. (Haddad Decl., Ex. D.)

Plaintiff alleges that she has "business relationship with many investors in the EB-5 funds managed by Defendants" and that Defendants "interfered with that relationship" by attempting to silence Plaintiff and that Defendants' actions were taken "solely out of malice and coercion." The alleged "interference" "caused injury to Plaintiff's relationship with her present and future clients" causing damages to Plaintiff of $50 million plus punitive damages (SAC ¶¶ 65-70), yet she does not identify any interference whatsoever with any actual or potential business relationship nor how any alleged conduct interfered with any such unidentified relationship. Thus, her claim again fails.

*Allegations Related to Claim for Defamation*

In furtherance of their alleged "interference" with Plaintiff's business and advocacy efforts, Plaintiff alleges that the Defendants retaliated against her by (a) filing the N.Y. Action; and (b) defaming her. (SAC ¶¶ 43 and 46). Specifically, the Plaintiff alleges that (a) Defendant Mastroianni called Plaintiff an "ambulance chaser" and a "fraud" (SAC ¶¶ 47-48); (b) Attorney Haddad allegedly "sent an agent to Chicago and stated to at least one acquaintance of Plaintiff to the effect that this Court has determined that Plaintiff has violated law by providing legal services illegally." (SAC ¶ 50); and (c) Attorney Haddad allegedly sent a defamatory email, the

Haddad Email, to the Yan Arbitrator (SAC ¶ 51).[9] The foregoing allegations are largely rehashed from the Amended Complaint and this Court previously found that such allegations could not sustain a claim for defamation.

## ARGUMENT

### I. THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED

As the Court held in the Decision, to state a claim for tortious interference with a business relationship, the plaintiff must allege: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." Decision at 8, *citing Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996); *see also*, *Voyles v. Sandia Mort. Corp.*, 196 Ill. 2d 288 (2001); *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615 (1st Dist. 1995). The SAC fails to plausibly assert each element.

The SAC, just as the Amended Complaint, fails to plead any intentional and unjustified interference with Plaintiff's business and this claim should be dismissed. Plaintiff alleges that the Defendants failed to disclose *to the investors*, and not to her, (a) the terms and conditions of the Brokerage Agreement and fees to be paid *by the investors* to GDOS; and (b) *the investors'* withdrawal rights and potential conflicts of their immigration attorney. *See* SAC ¶¶ 28-42. None of this relates to Plaintiff or her relationship with any of the *investors*. Plaintiff further alleges that the Defendants interfered with her business by preventing her from representing the investors' interests by defaming her, filing the N.Y. Action and opposing the release of confidential material from the Yan Arbitration

---

[9] Finally, the Plaintiff falsely alleges that Attorney Haddad was not in possession of the emails referenced in the Haddad Email and that Attorney Haddad refused to produce such emails for *in camera* review by the Court. (SAC

– all in an attempt to "silence" Plaintiff. *See* SAC ¶¶ 37, 43 and 46. This does not present a viable or plausible claim for relief for tortious interference with a business relationship.

Plaintiff cannot assert a tortious interference claim based on alleged injuries to other parties. Nor can the Defendants' concerns to keep an arbitration confidential form the basis of such a claim particularly when the issue of confidentiality was litigated before the Arbitrator and the Plaintiff lost. Finally, notwithstanding her multiple pleadings, there are no allegations in the SAC suggesting that the Defendants advised anyone not to hire Plaintiff or interfere with Plaintiff's ability to do business. There is no pleading of any breach or termination of expectancy or any resulting damages. The claim for relief therefore fails.

Thus, the SAC, just as the Amended Complaint before it, fails to plead any intentional and unjustified interference with Plaintiff's business and these claims must be dismissed. Decision at 9, *citing Atanus v. Am. Airlines, Inc.*, 932 N.E.2d 1044, 1051 (Ill. App. Ct. 2010) ("The element of 'purposeful' or 'intentional' interference refers to some impropriety committed by the defendant in interfering with the plaintiff's expectancy of entering into a valid business relationship with an identifiable third party.") Nor can the Plaintiff's unsustainable claims of "defamation" support such a claim. Decision at 8-9, *citing Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1182 (Ill. App. Ct. 2014) (holding that a dismissed defamation claim cannot serve as a basis for a claim of intentional interference with prospective economic advantage). Finally, the filing of the N.Y. Action also cannot form the basis of a claim for intentional interference with prospective economic advantage. Decision at 9, *citing Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) ("Illinois law prohibits

---

¶¶ 52-53). Not only do the emails exist; they were provided to the Court for *in camera* review on March 6, 2020, before dismissal of the Amended Complaint. Of course, none of this sideshow relates to any actual claim for relief.

*6126489.1* 12

... basing a cause of action for tortious interference with business opportunity on the wrongful filing of a lawsuit.").

## II. THE DEFAMATION CLAIM SHOULD BE DISMISSED

To state a claim for defamation, a plaintiff must allege facts showing: (1) a false statement by the defendant about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) that publication caused damages. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006). Plaintiff must plead the substance of any statement "with sufficient precision and particularity so as to permit initial judicial review of its defamatory content." Decision at 6-7, *citing Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Using the foregoing standards cited by the Court and the Court's analysis in the Decision, it is abundantly clear that the Plaintiff has not cured the deficiencies of her claims for defamation:[10]

(a) Plaintiff alleged that the Defendants filed the New York Action in retaliation to Plaintiff's "advocacy" actions. (SAC ¶ 46) In its Decision, this Court has already ruled that statements by parties in connection with a lawsuit do not constitute defamation. Decision at 7 *citing Marchioni v. Bd. of Educ. of City of Chi.*, 341 F. Supp. 2d 1036, 1051 (N.D. Ill. 2004). The filing of the N.Y. Action thus cannot be the basis of a defamation claim.

(b) Plaintiff alleges that Defendant Mastroianni called Plaintiff an "ambulance chaser" and a "fraud" in a news article. In the Decision, the Court has already ruled that since Plaintiff is not an attorney, calling her an "ambulance chaser" cannot impugn her and in any event, that the statement is a non-actionable statement of opinion. Decision at 7-8; *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 699 (Ill. App. Ct. 2002). Finally, as to the allegation that Defendant Mastroianni called her a "fraud," the

---

[10] The allegations concerning "Linda" and defendant Ying Ding (identified in the SAC as "GDOS") do not relate to the moving Defendants and are not addressed here. (SAC ¶ 45)

quote alleged in ¶ 48 of the SAC expressly says that Mastroianni was referring to claims of fraud in a pleading filed in New York, a statement that is objectively true and not actionable as a matter of law because it describes a judicial proceeding. N.Y. Civ. Rights Law § 74 ("a civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding."); *Procter & Gamble Co. v. Quality King Distributions, Inc.*, 974 F. Supp. 190 (E.D.N.Y. 1997) (applying N.Y. Civ. Rights Law § 74 to statements made by parties to the press).

(c) Plaintiff alleges that Attorney Haddad, allegedly through an unnamed agent, stated to an unnamed acquaintance of Plaintiff in an undisclosed location that this Court had somehow ruled that Plaintiff was illegally providing legal services. This is exactly what was pleaded in the Amended Complaint, which the Court already found to be insufficient. Plaintiff's allegation against Attorney Haddad continues to lack the "when, how, or to whom the allegedly defamatory was published" to sustain a claim for defamation, such as the identity of either the agent or the Plaintiff's acquaintance. Decision at 7, *citing Belcastro v. United Airlines, Inc.*, No.17-cv-01682, 2018 WL 1875537, at *8 (N.D. Ill. Apr. 19, 2018) (finding that the plaintiff could not state a claim for defamation when he failed to provide information as to the "when, how, or to whom the allegedly defamatory statement was published").[11]

(d) Plaintiff claims that Attorney Haddad allegedly sent an email to the Yan Arbitrator that Plaintiff alleges is defamatory stating that in his and the Defendants' experience, Plaintiff sends "highly offensive personal emails" addressing such inappropriate matters as prostitution and making accusations of espionage. First, on its face, the email does not accuse Plaintiff of prostitution or espionage. It reports that Plaintiff has sent emails that describe Defendants as prostitutes (using more

---

[11] It is not surprising that even after being told by this Court what was required to plead a claim, Plaintiff cannot provide any details of her farcical assertion … it never happened.

colorful language) and worse. The Haddad Email constitutes (a) a statement made in connection with litigation that is not actionable; (b) a statement of opinion that is therefore is not actionable; and (c) the Yan Arbitrator ruled that the email is "shielded by privilege." (Haddad Decl., Ex. C; *Marchioni*, 341 F. Supp. 2d at 1051*; Schivarelli*, 776 N.E.2d at 699). In any event, as the Court is aware from Attorney Haddad's March 6, 2020 submission of the subject emails to the Court for *in camera* review, the statement itself is true that Makhsous sends emails that contain offensive language, and her pleading continues the pattern of reckless and offensive rhetoric. None of her allegations gives rise to any viable or plausible claim for relief.

### III. NO FURTHER LEAVE TO AMEND SHOULD BE ALLOWED

Because (a) this Plaintiff already had two opportunities to amend her Complaint, and did not do what the Court advised her to do in the Decision, and (b) this Plaintiff has a documented and adjudicated history of making up facts and getting sanctioned, no further opportunity to plead yet again should be allowed. The SAC should be dismissed with prejudice.

### CONCLUSION

For the reasons set forth herein, it is respectfully requested that the Court dismiss the SAC with prejudice and grant such other relief as it deems just and proper.

Dated: June 22, 2020

| | |
|---|---|
| LAWRENCE KAMIN LLC | OTTERBOURG P.C. |
| By: /s/ Peter E. Cooper | By: /s/ Richard G. Haddad |
| Peter E. Cooper | Richard G. Haddad (*pro hac vice*) |
| (pcooper@lawrencekaminlaw.com) | (rhaddad@otterbourg.com) |
| 300 South Wacker Drive, Suite 500 | 230 Park Avenue |
| Chicago, Illinois 60606 | New York, New York 10169 |
| Tel: (312) 372-1947 | Tel: (212) 661-9100 |

*Attorneys for Defendants Nicholas A. Mastroianni II, Richard Haddad, U.S. Immigration Fund, LLC, 1568 Broadway Funding 100, LLC and 701 TXQ Funding 1000, LLC*