**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| XUEJUN ZOE MAKHSOUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-01230 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| NICHOLAS A. MASTROIANNI II, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Xuejun Zoe Makhsous, proceeding *pro se*, is a self-described investor rights advocate and paralegal in-training. In her First Amended Complaint ("FAC," Dkt. No. 27), Plaintiff alleged that Defendants Nicholas A. Mastroianni II, Ying Ding, and numerous companies under their control, as well as their lawyer Richard Haddad, defamed her and tortiously interfered with her business relationships with several Chinese investors who she claims were defrauded in connection with their investments in funds run by Mastroianni. This Court dismissed the FAC but granted Plaintiff leave to file a further amended version of her complaint. (Dkt. Nos. 81–82.) Thus, Plaintiff subsequently filed the Second Amended Complaint ("SAC", Dkt. No. 88), again naming as Defendants Mastroianni, Ding, and Haddad, but dropping all but three of the companies named as Defendants in the FAC. Now, Defendants have filed two motions to dismiss the SAC, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 93, 104.) Also before this Court is Plaintiff's motion for sanctions. (Dkt. No. 119.) For the reasons that follow, Defendants' motions are granted and Plaintiff's motion is denied.

## BACKGROUND

### I.      Facts Outside the SAC

The Court first considers which allegations are properly before it in connection with Defendants' motions to dismiss. Under the familiar standard governing Rule 12(b)(6) motions, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). But importantly, the Court's review typically does not include matters outside the pleadings. *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill. 2015); *see also* Fed. R. Civ. P. 12(d). "A 'narrow exception' to this general rule permits 'documents attached to a motion to dismiss to be considered part of the pleadings if they are referred to in the plaintiff[']s complaint and are **central** to the plaintiff[']s claim.'" *Id.* (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)).

Yet, in one of the motions to dismiss, Defendants recount numerous extraneous facts, supported by citations to materials outside the pleadings and tangential to Plaintiff's claims. It appears that Defendants' purpose for including those outside facts and documents is to depict Plaintiff as a vexatious litigant. But while Defendants may feel aggrieved by this litigation, their frustration is largely immaterial to the issues before this Court in connection with their motions to dismiss. Then, in her response to the motions to dismiss, Plaintiff attaches several exhibits and

submits her own declaration in an effort to add more detail to the SAC's allegations. Unlike Defendants, "[a] plaintiff may supplement existing claims with additional factual allegations in the response to the motion to dismiss as long as the new facts are consistent with the original claims made in the complaint." *Adedeji v. Cobble*, No. 10 C 0892, 2013 WL 449592, at *2 (N.D. Ill. Feb. 5, 2013). Considering such material may assist the Court in determining whether an otherwise deficient complaint could be cured with an amendment. Accordingly, the Court will consider Plaintiff's new factual allegations where appropriate.

## II.     The SAC's Allegations and Procedural History

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the SAC as true and views those facts in the light most favorable to Plaintiff as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Plaintiff describes herself as a translator, researcher, an EB-5[1] investor rights advocate, and a paralegal in-training. (SAC ¶ 1.) Beginning in 2017, Plaintiff took up the cause of Chinese investors who allegedly had been defrauded in connection with their investments in EB-5 funds run by Mastroianni. (*Id.* ¶¶ 13–18.) Broadly, Plaintiff claims that Chinese nationals solicited Ding to advise them on EB-5 investments. (*Id.* ¶ 26.) Unbeknownst to the investors, Ding had a kickback agreement with Mastroianni pursuant to which Ding would steer investors to Mastroianni's funds and the investors would be charged substantial "administrative fees," the majority of which would be used to pay Ding for his services. (*Id.* ¶¶ 27–30, 34.) Ultimately, the Chinese investors were highly dissatisfied with their investments. (*Id.* ¶¶ 25, 29.)

---

[1] While the SAC omits a description of the EB-5 Immigrant Investor Program, this Court previously described it as a program giving foreign citizens "the opportunity for lawful permanent residence in the United States if they invest at least $500,00 in a United States commercial enterprise and that investment results in the creation of at least ten permanent jobs for United States workers, so long as the investor's funds remain at risk." *Makhsous v. Mastroianni*, No. 19-cv-01230, 2020 WL 1530740, at *1 (N.D. Ill. Mar. 31, 2020).

Plaintiff has advocated for Chinese EB-5 investors and assisted some such investors with due diligence and withdrawing their investments. (*Id.* ¶¶ 17–18.) In the case of one investor, Makhsous represented him in a New York arbitration proceeding against Mastroianni and one of his funds. (*Id.* ¶¶ 8, 19.) In retaliation for Plaintiff's advocacy for EB-5 investors, Defendants made various allegedly defamatory statements about her between 2018 and 2019. (*Id.* ¶ 43.) They also initiated a lawsuit against her seeking $23 million in damages that was ultimately dismissed. (*Id.* ¶¶ 46, 49.) During the course of the New York arbitration proceeding, Defendants' attorney, Haddad, sent an email to the arbitrator accusing Plaintiff of sending offensive personal emails referring to prostitution and espionage. (*Id.* ¶ 51.)

## DISCUSSION

### I. Motion to Dismiss

In her FAC, Plaintiff asserted claims for defamation and intentional interference with a prospective economic advantage based on Defendants' allegedly retaliatory conduct. This Court dismissed both claims, finding that Plaintiff provided insufficient details of Defendants' allegedly violative actions. However, the Court granted Plaintiff leave to amend her complaint to remedy the deficiencies identified in the Court's memorandum opinion and order. Plaintiff then timely filed her SAC, once again setting forth claims for defamation and intentional interference with a prospective economic advantage. With their present motions to dismiss, Defendants argue that Plaintiff largely rehashes the previously dismissed allegations from the FAC without providing any new details that would support a viable claim.

### A. Defamation

Plaintiff's defamation claim is predicated on four different statements made by one or more Defendants. In Illinois, a "statement is considered defamatory if it tends to cause such harm

to the reputation of another that it lowers the person in the eyes of the community or deters third persons from associating with her." *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). To state a defamation claim, a plaintiff must allege facts showing: (1) a false statement by the defendant about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) that publication caused damages. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006).

There are two recognized types of defamatory statements in Illinois: defamation *per se* and defamation *per quod*. *Naleway v. Agnich*, 897 N.E.2d 902, 908 (Ill. App. Ct. 2008). In dismissing the FAC, the Court found that Plaintiff had not alleged the special damages necessary to make out a claim for defamation *per quod* and thus considered only whether Plaintiff stated a claim for defamation *per se*. The SAC now specifically labels Plaintiff's claim as one for defamation *per se*. It also again contains the same "vague allegation of reputational or money damages 'without a specific accounting of those damages or an explanation of how the purported defamation caused them,'" that this Court previously found insufficient to plead special damages. *See Makhsous v. Mastroianni*, No. 19-cv-01230, 2020 WL 1530740, at *3 (N.D. Ill. Mar. 31, 2020) (quoting *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009)).[2] Thus, this Court will consider only whether Plaintiff has stated a claim for defamation *per se*.

A defamatory statement is actionable *per se* where "its harm is obvious and apparent on its face." *Solaia Tech.*, 852 N.E.2d at 839. Illinois recognizes five categories of statements as considered defamatory *per se*:

---

[2] In her response to the motions to dismiss, Plaintiff for the first time tries to allege special damages, but these are the type of new allegations that cannot be considered in a brief opposing dismissal. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("Although a plaintiff may assert additional facts in a motion to defeat dismissal, he or she cannot amend his or her complaint to state new claims in such a motion.").

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* Only one of the four sets of statements upon which Plaintiff bases her defamation claim was not previously alleged in the FAC. The Court therefore considers first considers the other three sets of statements the Court previously held did not give rise to a cognizable defamation claim.

In the FAC, Plaintiff claimed that Defendants defamed her by recruiting "Linda" to discredit Plaintiff in chat groups used by certain of the EB-5 funds' investors. This Court held that Plaintiff's allegations regarding Linda did not state a claim because Plaintiff failed to point to any specific defamatory statement. This time, Plaintiff alleges that Linda told the investors Plaintiff was a "fraud." (SAC ¶¶ 45, 56.) Further, in her response to the motions to dismiss, Plaintiff elaborates that Linda described Plaintiff as a "bad person" and "unreliable." (Pl.'s Opp'n at 17, Dkt. No. 109.) A statement of opinion that cannot be reasonably interpreted as stating an actual fact, however, will not give rise to a defamation claim. *See Solaia Tech.*, 852 N.E.2d at 840. The determination of whether a statement of opinion is nonactionable is informed by the following considerations: "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Id.*

It is clear here that Linda's alleged descriptions of Plaintiff as "unreliable" and a "bad person" are nonactionable statements of opinion, as neither statement has a precise and readily understood meaning and neither is verifiable. *See, e.g.*, *Coghlan v. Beck*, 984 N.E.2d 132, 148 (Ill. App. Ct. 2013) (finding that the terms "corrupt director" and "bully tactics" did not have a precise and readily understood meaning because "[w]hat constitutes corruption or the actions of a bully

will vary widely from one person to another"). The claim that Linda told investors Plaintiff was a "fraud" presents a closer question. But Plaintiff does not provide any further information concerning the context of Linda's statement. Calling someone a fraud, unaccompanied by any accusation of verifiable fraudulent conduct, is the kind of "loose, figurative language that no reasonable person would believe presented facts." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1022 (Ill. 2008); *see also Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 699 (Ill. App. Ct. 2002) (explaining that statement accusing the plaintiff of "cheating the city" was a nonactionable statement of opinion because it was not made in any specific factual context); *Dubinsky v. United Airlines Master Exec. Council*, 708 N.E.2d 441, 451 (Ill. App. Ct. 1999) (holding that the general statement that the plaintiff was a "crook," "in the absence of factual context, is a statement of opinion, not objectively verifiable and devoid of factual content").

Plaintiff next claims that Mastroianni told a reporter that Plaintiff was an "ambulance chaser" and a "fraud," statements that were later published by the reporter. The Court previously found that Mastroianni's statement that Plaintiff was an "ambulance chaser" did not support a defamation claim. In so holding, the Court explained that the term "ambulance chaser" was commonly used as a derogatory term for a lawyer and because Plaintiff was not a lawyer, "it cannot truly impute to Plaintiff a lack of ability in her profession or otherwise harm her in her profession." *Makhsous*, 2020 WL 1530740, at *4. Nothing in the SAC changes that analysis. Plaintiff cannot make the statement actionable by further pleading that Mastroianni accused her of only being "interested in duping investors into paying her legal fees." (SAC ¶ 47.) In the first place, Plaintiff expressly alleges that she had "business relationship[s] with many investors in the EB-5 funds managed by Defendants" from which she expected to obtain a financial benefit; hence, her claim for intentional interference with a prospective economic advantage. (*Id.* ¶¶ 64–

7

70.) Moreover, Mastroianni's suggestion that Plaintiff "duped" investors into paying her fees, without further context, again constitutes loose and figurative language that cannot support a defamation claim.

In her response brief, Plaintiff claims that Mastroianni's statements to the reporter were defamatory because they amount to accusations that she is practicing law without a license. But Plaintiff fails to allege that Mastroianni made any other statements to provide context necessary for that implication to arise; in particular, he does not state that Plaintiff is not a lawyer or claim that she is performing the kind of work for which a law license is necessary. *See Dubinsky*, 708 N.E.2d at 329–30 ("One cannot rely on an assumption that those who heard the statement were completely apprised of all the developments . . . so as to create a definitive factual context for the use of the [purportedly defamatory statement]."). Finally, Plaintiff's contention that Mastroianni called her a "fraud" is a misleading characterization of Plaintiff's own allegations. As alleged, Mastroianni made statements to the reporter that Plaintiff was trying to distract "from the pending N.Y. action against her for fraud and related causes of action." (SAC ¶ 48.) But just two paragraphs earlier, the SAC acknowledges that certain Defendants filed a lawsuit in New York state court against Plaintiff alleging fraud, among other things. (SAC ¶ 46.) Mastroianni did not defame Plaintiff by accurately referring to a lawsuit that had been filed against her.

The last previously rejected defamatory statement repeated in the SAC concerns Plaintiff's allegation that Haddad told at least one of Plaintiff's acquaintances that this Court had determined that she was practicing law without a license. When the Court last addressed that allegation, it held that Plaintiff had not stated a claim because she did not provide sufficient detail regarding the statement, such as the identity of Plaintiff's acquaintance, and provided inconsistent detail as to who made the statement. *Makhsous*, 2020 WL 1530740, at *3. While her SAC fails to remedy

either issue, in her response brief, Plaintiff identifies the individual acquaintance as a process server she had used in other lawsuits. But yet again, Plaintiff is inconsistent in identifying the individual who made the statement. At one point in her SAC, she claims Haddad sent an agent to make the statements but later she claims Haddad made the statements himself. (Compare SAC ¶ 50 *with id.* ¶ 58.) Plaintiff does not resolve that inconsistency in her response brief. (*E.g.*, Pl.'s Opp'n at 7 (alleging that Haddad made the defamatory statements "[t]hrough Haddad's agent and/or over phone call").) Because Plaintiff again provides inconsistent detail as to who made the statement about her practicing law without a license, Plaintiff fails to state a defamation claim.

The one new set of defamatory statements pleaded in the SAC concerns Defendants' representations—made both to this Court and to an arbitrator in another proceeding—that Plaintiff had sent them offensive emails discussing espionage, prostitution, and other vulgar or unprofessional topics. But when the Court dismissed the FAC, it recognized that "parties are protected from defamation actions based on statements made in connection with a lawsuit." *Makhsous*, 2020 WL 1530740, at *4 (citing *Marchioni v. Bd. of Educ. of City of Chi.*, 341 F. Supp. 2d 1036, 1051 (N.D. Ill. 2004)). That principle applies equally to Defendants' alleged representations concerning the vulgar emails, given that Defendants allegedly made those statements directly to this Court or the arbitrator during the course of each respective proceeding.

In sum, Plaintiff has again failed to plead adequately that any Defendant made a statement about her that is defamatory *per se*. For that reason, her defamation claim is dismissed.

### B.     Intentional Interference with Prospective Economic Advantage

The SAC also attempts to state a claim for tortious interference with a business relationship. As it did in ruling on the FAC, the Court construes Plaintiff's pleading as asserting a claim for the tort of intentional interference with a prospective economic advantage. To state such

a claim, the plaintiff must allege: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996).

According to Plaintiff, she had two business relationships with which Defendants interfered. First, she alleges that she had a reasonable expectancy of entering into a business relationship with several Chinese investors who wished to withdraw their investments from EB-5 funds managed by Defendants. Defendants prevented that expectancy from coming to fruition by having "Linda" defame Plaintiff in the investors' group chats. However, as this Court previously stated in dismissing the FAC, a dismissed defamation claim cannot serve as the basis for a claim of intentional interference with a prospective economic advantage. *Makhsous*, 2020 WL 1530740, at *4 (citing *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1182 (Ill. App. Ct. 2014)). And because this Court has again dismissed Plaintiff's defamation claim based on Linda's statements, Plaintiff's intentional interference with a prospective economic advantage claim based on those statements also fails.

In addition, Plaintiff contends that Defendants' conduct forced her to terminate her representation of the withdrawing investor in the New York arbitration proceeding. Yet the only conduct to which Plaintiff points as interfering with that business relationship is conduct Defendants directed toward Plaintiff. But an intentional interference claim must be supported by conduct directed at the third-party business partner. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 686 (7th Cir. 2014) ("Actions that form the basis of a tortious interference claim must be directed at third-party business prospects." (internal quotation marks omitted)). And Plaintiff

fails to allege that Defendants intentionally interfered with her relationship with the withdrawing investor in the New York arbitration proceeding. Because Plaintiff fails to plead any other conduct that would constitute intentional interference with Plaintiff's business expectancy, her intentional interference with a prospective economic advantage claim is dismissed.

### C.    Dismissal with Prejudice

When this Court dismissed Plaintiff's FAC, as that ruling was the first time Plaintiff's claims had been dismissed under Rule 12(b)(6), it afforded Plaintiff an opportunity to file a further amended complaint to remedy the deficiencies in the ruling. Having now found that Plaintiff again has failed to state a viable claim, the Court must determine whether to dismiss the SAC with prejudice. Given that Plaintiff's SAC contains many of the same deficiencies that the Court identified in dismissing her FAC and she has made little progress toward stating a viable claim, the Court finds dismissal with prejudice warranted. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." (internal quotation marks omitted)).

### II.    Sanctions

Before concluding this matter, the Court addresses Plaintiff's motion for sanctions under Federal Rule of Civil Procedure 11. Plaintiff's motion is based on Defendants' allegedly false statements during hearings before this Court, accusing Plaintiff of sending them offensive and vulgar emails that discussed inappropriate topics such as prostitution and espionage. As discussed above, those emails do not give rise to a defamation claim because they were made in the context of a judicial proceeding. Nonetheless, Plaintiff separately moves to sanction Defendants for those representations under Rule 11.

As an initial matter, Rule 11 is not the proper basis to sanction Defendants for representations made in open court because the Rule, by its express terms, applies only to statements made in "a pleading, written motion, or other paper." Fed. R. Civ. P. 11(b). Of course, the Court still has "inherent power to impose sanctions for abuse of the judicial system." *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004). Such sanctions may be "imposed if the court finds that a party acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 928 (internal quotation marks omitted). Plaintiff, however, has failed to establish that Defendants have made any misrepresentations regarding the supposedly offensive emails so as to warrant the imposition of sanctions. Having reviewed the subject emails *in camera*, the Court believes that while Defendants may have exaggerated the offensiveness of the emails, their representations to this Court do not appear to have been made in bad faith. There was an email in the chain that did use vulgar language. While the offending email was not actually drafted by Plaintiff, she forwarded that email to one of Defendants' counsel. And looking at the email chain overall, there was a basis for Defendants to claim that there were inappropriate statements that at least had some relationship to topics such as prostitution and espionage. Thus, the Court does not believe Defendants' representations were sanctionable and accordingly denies Plaintiff's motion for sanctions.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss the SAC (Dkt. Nos. 94, 103) are granted and Plaintiff's motion for sanctions (Dkt. No. 119) is denied. The SAC is dismissed with prejudice. All other pending motions and hearing dates are stricken. The Clerk will enter Judgment in favor of Defendants and this case will be closed.

ENTERED:

Dated:  March 25, 2021

_____
Andrea R. Wood
United States District Judge